Jeff Dominic Price  |  SBN 165534
2500 Broadway, Suite 125
Santa Monica, California 90404
jeff.price@icloud.com
Tel. 310.451.2222

Attorney for the plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LEMOON, Individually and as Successor in Interest of Decedent JEREMIAH CONAWAY,<br><br>        Plaintiff,<br><br>        vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., W. TAYLOR FITHIAN, M.D., DINESH NAGAR, M.D., COUNTY OF SOLANO, THOMAS A. FERRARA, Sheriff, County of Solano, JOHN MAIKE, MARNI BALLESTEROS and DOES 1-20, inclusive,<br><br>        Defendants. | No.<br><br>COMPLAINT<br><br>1.  Failure to Provide Medical Care in violation of Fourteenth Amendment, 42 U.S.C. § 1983<br>2.  Deprivation of Substantive Due Process in violation of First and Fourteenth Amendments, 42 U.S.C. § 1983<br>3.  Failure to Furnish Medical Care, 42 U.S.C. § 1983<br>4.  Municipal and Supervisory Liability, 42 U.S.C. § 1983<br>5.  Calif. Civil Code § 52.1<br>6.  Negligent Supervision, Training, Hiring, and Retention<br>7.  Negligence<br>8.  ADA, 42 U.S.C. §§ 12131 et seq./RA, 29 U.S.C. § 794<br>9.  Wrongful Death<br><br><u>DEMAND FOR JURY TRIAL</u> |

On April 10, 2019, Jeremiah Conaway, a pretrial detainee who had a serious medical and mental health need that was treatable and son of Plaintiff, Teresa LeMoon, died of suicide in a Solano County jail at the age of 34.

## Jurisdiction and Venue

1.  This is a civil rights, wrongful death, and survival action arising from Defendants' failure both to provide for Decedent's serious medical needs and to provide competent medical care, treatment, and suicide precautions, and failure to comply with legal obligations concerning Decedent's serious medical needs, which occurred in a jail facility in Solano County and resulted in the death of JEREMIAH CONAWAY by suicide on or about April 10, 2019. This action is brought pursuant to 42 U.S.C. § § 1983 and 1988; the First, Fourth, and Fourteenth Amendments to the United States Constitution; the Americans with Disabilities Act ("ADA") Title II (42 U.S.C. §§ 12131 et seq.) and Title III (42 U.S.C. §§ 12131 et seq.) and the Rehabilitation Act ("RA") (29 U.S.C. § 794 et seq.). Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343 (a) (3) and (4), and the above-mentioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.C. § 1367, to hear and decide claims arising under state law

2.  Venue is proper in the United States District Court of the Northern District of California, pursuant to 28 U.S.C. § 1391(b), in that a defendant resides in this district.

## Parties and Procedure

3.  Plaintiff Teresa LeMoon is the mother of Decedent Jeremiah Conaway and a resident of the State of Hawaii; Plaintiff brings these claims individually and as a successor in interest for Decedent Jeremiah Conaway.

4.  Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq. which provide for survival and wrongful death actions. Plaintiff also brings the claims individually and on behalf of Decedent Jeremiah Conaway on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, the ADA and RA, and federal and state civil rights law.

Plaintiffs also bring these claims as Private Attorneys General, to vindicate not only their rights, but others' civil rights of great importance.

5.      Defendant County of Solano a public entity established by the laws and Constitution of the State of California, and owns, operates, manages, directs and controls the Solano County Sheriff's Office, also a public entity, and employs other defendants in this action. Under California Government Code § 815.2, Defendant Solano County is vicariously liable for the state law torts of its employees and agents, including but not limited to those named as Defendants herein.

6.      Defendant Sheriff-Coroner Thomas A. Ferrara, at all times mentioned herein, was employed by Defendant Solano County as Sheriff-Coroner for Solano County, and was acting within the course and scope of that employment. As Sheriff-Coroner, Defendant Ferrara was the final policy-making official for the Solano County jails, ultimately responsible for all policies, procedures, and training at the jails. He is being sued in his individual, supervisory and official capacities as Sheriff-Coroner for Solano County.

7.      Defendant Dinesh Nagar, M.D. was at all times herein mentioned a physician licensed to practice medicine in the State of California and an employee of the County of Solano and an employee and/or agent of Defendant California Forensic Medical Group, Inc. ("CFMG"), working as the medical director of Defendant Solano County's jails. At all material times, Defendant Nagar was a policy-making official for Defendant Solano County. He is being sued in his individual, supervisory, and official capacities. Defendant Nagar resides in Tiburon, in Marin County, within this district.

8.      Defendant John Doe was at all times herein mentioned employed by Defendant CFMG and or Solano County and was acting within the course and scope of that employment or agency. Defendant Doe performed the intake medical and psychiatric assessment on Jeremiah Conaway when he was booked into Solano

1  County jail, and, on information and belief, did so without a Registered Nurse's

2  clinical supervision.

3          9.      Defendant California Forensic Medical Group, Inc. was, at all material

4  times, a California corporation licensed to do business in California, with its

5  corporate office located in Monterey, California, within this district. Defendant

6  Solano County contracted with Defendant CFMG for the provision of medical and

7  mental health care in Solano County jails. Defendant CFMG provided medical,

8  mental health, and nursing care to inmates and detainees in Solano County jail,

9  pursuant to contract. On information and belief, CFMG and its President, officer,

10  director, employee and managing agent Defendant W. Taylor Fithian, M.D., were

11  responsible for making and enforcing policies, procedures, and training related to

12  the medical and mental health care of prisoners and detainees in Defendant Solano

13  County jails, including: assessing inmates for possible suicide risk; instituting

14  appropriate suicide precautions; approving housing classification; and

15  communicating about an inmate's suicide risk with custodial staff, health care

16  professionals, and outside facilities.

17          10.     Defendant W. Taylor Fithian, M.D., was at all times herein mentioned

18  a physician licensed to practice medicine in the State of California, a Board certified

19  psychiatrist, and an officer, director, managing agent, employee and/or agent of

20  Defendant CFMG, working as the medical director of Defendant Solano County

21  jails. Fithian was responsible for overseeing and providing medical and mental

22  health care to prisoners and detainees, and for instituting appropriate policies,

23  procedures, and training concerning suicide-risk assessment and prevention

24  protocols, and was acting with the course and scope of that employment. On

25  information and belief, Defendant Fithian was ultimately responsible for CFMG's

26  provision of medical care to inmates at the jail, including assessing inmates for

27  possible suicide risk, instituting appropriate suicide-prevention programs, and,

28

1   where inmates were transferred from other facilities, obtaining suicide-risk

2   information from those facilities. At all material times, Defendant Fithian was the

3   highest policy-making official for Defendant CFMG.

4         11.    Defendant Fithian was at all times responsible for the medical and

5   psychiatric care provided to Jeremiah Conaway at Solano County jail, and for

6   making sure that Jeremiah Conaway was placed on appropriate suicide precautions

7   or transferred for inpatient psychiatric care.

8         12.    In addition, Defendant Fithian was at all times responsible for staffing

9   the CFMG medical and psychiatric services at Solano County jail, including but not

10  limited to making sure that only properly licensed and credentialed health care

11  providers provide care, and that no provider work outside his or her scope of

12  practice or licensure. Defendant Fithian resides in Monterey, California, within this

13  district.

14        13.    Defendant Marni Ballesteros, R.N., at all times mentioned herein, was

15  employed by Defendant Solano County and was an employee and/or agent of

16  CFMG, working in Defendant Solano County's jail, as a Psychiatric Nurse, and she

17  was acting within the course and scope of that employment.

18        14.    Defendant John Maike at all times mentioned herein was employed by

19  Defendant Solano County and was an employee and/or agent of CFMG, as an MFT

20  and was acting within the course and scope of that employment and was not

21  qualified, under California law and/or nationally accepted standards, to perform an

22  unsupervised suicide-risk assessment or to act independently as a mental health care

23  provider without supervision by a licensed health care provider as required by

24  California law and the California Code of Regulations. Plaintiff is informed and

25  believes and thereon alleges that Defendants CFMG, Fithian, and other DOE

26  Defendants allowed Defendant Maike to work without the required clinical

27  supervision.

28

15.     The true names of Defendants sued herein as DOES 1–20 ("DOE Defendants") are unknown to Plaintiff, who therefore sue these Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained. Each DOE Defendant was an employee/agent of Solano County or CFMG, and at all material times acted within the course and scope of that relationship. Defendants have refused to provide complete records concerning Jeremiah Conaway, which would reveal the names and capacities of DOE Defendants. Plaintiff is informed and believes and thereon alleges that each Defendants so named was negligently, wrongfully, or otherwise responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Further, one or more DOE Defendants was at all material times responsible for the hiring, training, supervision, and discipline of other Defendants including DOE Defendants.

16.     Plaintiff is informed and believes and thereon alleges that each of the Defendants was at all times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiff is informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

17.     The acts and omissions of all DOE Defendants as set forth herein were at all material times pursuant to the actual customs, policies, practices, and procedures of Solano County, and/or CFMG.

18.     At all material times each Defendant acted under color of the laws,

statutes, ordinances, and regulations of the State of California and the United States.

## General Averments

19.     Plaintiff timely and properly filed tort claims pursuant to California Government Code §§ 910 et seq., and this action is timely filed within all applicable statutes of limitation.

20.     This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

21.     On or about March 4, 2019, Jeremiah Conaway, the decedent, was arrested based upon a suspicion that he was in violation of probation, and he was booked into Solano County jail.

22.     CFMG's and Fithian's employee John Doe performed the intake medical and mental health assessment on Jeremiah Conaway; on information and belief, John Doe performed the intake assessment without any clinical supervision from a registered nurse, in violation of California law and state and national standards.

23.     Jeremiah Conaway had previously been incarcerated in Solano County jail in 2018.

24.     In 2018 Solano County officials documented Jeremiah Conaway's mental illness in official Solano County jail and medical records.

25.     On September 14, 2018, Jeremiah Conaway informed Solano County jail officials that he takes mental health medication.

26.     Despite the fact that Solano County had incarcerated Jeremiah Conaway in Solano County jails in the recent past and compiled a substantial record of Jeremiah Conaway's serious medical and mental health needs, the Defendants did not place Jeremiah Conaway on suicide watch upon his incarceration in the jail.

27.     Solano County jail personnel knew and/or must have known that Jeremiah Conaway posed a suicide risk.

28.     On March 4, 2019, a registered nurse cleared Jeremiah Conaway for booking into Solano County jail; on intake Jeremiah Conaway was selectively mute and did not communicate verbally.

29.     The Solano County medical records from 2018 acknowledged that Jeremiah Conaway was a Mental Health Patient.

30.     On information and belief, the Defendants did not consult Jeremiah Conaway's medical records from his earlier incarceration in Solano County jail or medical records from his recent stay in a residential drug rehabilitation facility.

31.     Jeremiah Conaway remained mute during his entire incarceration in Solano County jails from March 4, 2019, through April 10, 2019.

32.     On March 5, 2019, March 6, 2019, March 7, 2019, March 10 or 11, 2019, March 14, 2019, March 15, 2019, March 16, 2019, March 17, 2019, March 18, 2019, March 20, 2019, March 21, 2019, April 2, 2019, early April, 2019, April 8, 2019, and April 9, 2019, Decedent refused recreation.

33.     On March 26, 2019, Decedent refused dinner.

34.     On March 24, 2019, Decedent was seen by social worker Lisa Harwood, who noted that he had not taken six out of seven "unlocks" and also noted that he was mute. Despite the fact that Jeremiah Conaway was mute and noncommunicative and that mental health personnel were unable to fully assess him, Defendants failed to provide anti-depressants or other medication to Decedent.

35.     On March 31, 2019, Decedent refused a visit.

36.     Defendants failed to institute suicide precautions or place Jeremiah Conaway on suicide watch.

37.     At no time during his incarceration in Solano County jails from March 4, 2019, through April 10, 2019, was Jeremiah Conaway seen by a Psychiatrist or a Psychologist, and at no time was Decedent provided medication for his serious mental health needs.

38.     On April 2, 2019, Defendant Maike saw Decedent; Decedent did not engage in verbal communication with Defendant Maike and Defendant Maike offered Decedent mental health services but Decedent would not engage with Maike or answer questions.

39.     On April 3, 2019, Defendant Maike saw Decedent; Defendant Maike noticed that Decedent was not responding to calls to get up and was lying on his bunk with several uneaten meals in his cell. When Defendant Maike offered mental health services to Decedent he could not get Decedent to respond. Defendant Maike referred Decedent for an assessment.

40.     On April 4, 2019, Defendant Maike again saw Decedent, who rolled over on his bunk and covered his head with a blanket when his name was called. Maike noted that Decedent was not eating his meals and that he remained mute.

41.     On April 4, 2019, Defendant Ballesteros saw Decedent; Defendant Ballesteros observed that Decedent refused to engage or even acknowledge hearing Ms. Ballesteros. Ballesteros was unaware whether Decedent had a hearing deficit.

42.     On April 3, 2019, Defendant Nagar saw Jeremiah Conaway; Dr. Nagar observed Decedent's alarming behavior, including his remaining selectively mute, refusal to communicate, even with pen and paper, and the fact that he was not eating. Dr. Nagar also saw Jeremiah Conaway in Solano County jail on October 17, 2018. Defendant Nagar failed to prescribe medications for Decedent, failed to place him on suicide watch, failed to arrange for an immediate follow-up with a Psychiatrist or Psychologist, and failed to arrange for Decedent to be examined by a mental health doctor.

43.     On April 8, 2019, Defendant Maike again saw Decedent, who was mute and had a towel draped over his head and did not answer questions asked of him. Despite all of Maike's observations he failed to do anything to get Decedent medications and failed to take steps to place Decedent on suicide watch.

44.    On April 8, 2019, Defendant Ballesteros saw Decedent in his cell. When asked to sign a release of information form Decedent wrote "MEDS?" on a crossword puzzle paper. Defendant Ballesteros failed to take steps to have medications prescribed for Decedent and failed to do anything to have Decedent placed on suicide watch.

45.    On April 8, 2019, Plaintiff Teresa LeMoon informed Defendant Ballesteros that her son was mentally ill, that he had received psychiatric care for years and that he needed mental health treatment; Defendant Ballesteros stated that Decedent had not been seen by a Psychiatrist or Psychologist. Defendant Ballesteros also saw Jeremiah Conaway on September 17, 2018, when she noted that Jeremiah Conaway used methamphetamine, was diagnosed with depression, had a history of depression, and needed psych meds. On April 8, 2019, and April 9, 2019, Defendant Ballesteros did nothing to get psych meds to Decedent on an urgent basis; instead she referred Decedent to a Psych M.D. to be assessed for medication and she told Decedent to write down the medication he needed, despite the fact that she knew or must have known that Decedent presented a grave risk of suicide.

46.    On April 9, 2019, Defendant Maike saw Decedent and Defendant Ballesteros saw Decedent at later, at approximately 7:28 p.m.; both Defendants observed that Decedent was selectively mute. Neither defendant took any action to get medication for Decedent or to place him on suicide watch.

47.    At about 5:38 a.m., Solano County deputies and others found Jeremiah Conaway unresponsive in his cell, hanged by a fabric ligature fashioned by bedding material left inside the cell by the Defendants.

48.    Jeremiah Conaway was pronounced dead approximately one hour later.

49.    Defendants Solano County, Ferrara, CFMG, Fithian, and other Defendants housed Jeremiah Conaway in an isolation cell and at all times with no suicide precautions. Each of these Defendants must have known that placing

1  Decedent, a nonthreatening person at high risk of suicide, into an isolated,

2  segregated cell greatly increased his risk of suicide.

3      50.    Plaintiff is informed and believes and thereon alleges, that Defendants

4  Solano County, Ferrara, CFMG, Fithian, Nagar and DOE Defendants, failed to have

5  an appropriate suicide-prevention program, policies, training, or procedures in place.

6      51.    Defendants Solano County refused to provide Jeremiah Conaway's

7  complete records in response to Plaintiff's proper requests for them, and Plaintiff

8  reserves the right to amend this complaint with further allegations after Defendants

9  produce records in this matter.

10      52.    Plaintiff is informed and believes and thereon alleges, that Defendants

11  Solano County, CFMG, Fithian, Ferrara and Nagar deliberately indifferently failed

12  to train their employees to recognize the risk of suicide and to prevent suicide, even

13  the face of an obvious need for such training.

14      53.    Plaintiff is informed and believes and thereon alleges, that Defendants

15  Solano County, Ferrara, CFMG, Nagar and Fithian failed to have a qualified mental

16  health professional conduct mental health evaluations on inmate patients, with

17  deliberate indifference to the inmate patients' serious medical and mental health

18  needs.

19      54.    Plaintiff is informed and believes and thereon alleges, that Defendants

20  Solano County, Ferrara, Nagar, CFMG, and Fithian failed to have appropriate

21  policies, procedures, and training in place to communicate health matters, including

22  suicide risk, between health care, mental health care, and custody staff, and between

23  transferring authorities, with deliberate indifference to the inmate patients' serious

24  medical and mental-health needs.

25      55.    Defendants failed to provide competent medical and mental health care

26  and treatment, were deliberately indifferent to Jeremiah Conaway's serious medical

27  needs and suicide risk, and failed to provide him access to any available treatment

28

facility that would have given him the medical and psychiatric care and treatment he is required.

56.    Defendant Solano County had its own non-delegable duty to provide for the serious medical needs of Jeremiah Conaway, including providing him with a complete receiving medical screening and mental health screening for his suicide risk, and instituting appropriate suicide precautions, and failed to do so.

57.    Defendant Solano County, its employees and agents, including DOE Defendants, knew or must have known that Jeremiah Conaway was at risk of committing suicide, and failed to institute appropriate suicide precautions for him, which should have included, for example, but not limited to: transferring him to an acute psychiatric facility or keeping him under constant observation while he was in an isolated cell or actively suicidal; checking him at irregular intervals twice every thirty minutes otherwise while he was at risk of suicide; or providing him with a safety smock and appropriate housing and bedding, among other precautions.

58.    While Defendant Solano County contracted its correctional healthcare and mental health care to Defendants CFMG and Fithian, Solano County retains the non-delegable duty to provide competent and appropriate medical care and to provide for the serious medical needs of its jail inmates.

59.    On information and belief, CFMG and Fithian allow un-credentialed personnel to work outside their scope of practice and to perform intake medical and mental health assessments on jail inmates, without appropriate clinical supervision by Registered Nurses or physicians.

60.    The Solano County, CFMG, Fithian, and DOE Defendants failed to provide safe and adequate housing for Jeremiah Conaway, including placing him on suicide watch in a safe room or safety cell.

61.    Solano County's, CFMG's, and Fithian's suicide prevention policies did not meet generally accepted state or national standards, The policies even

required deputies to perform a suicide watch by checking on the inmate every thirty minutes, in violation of California law and national standards. State and generally accepted national standards require jail personnel to keep actively suicidal inmates or suicidal inmates in an isolation cell under constant observation, and to monitor potentially suicidal inmates in the general population twice every thirty minutes on an irregular schedule. The Solano County and CFMG Defendants, their employees and agents, failed to put Jeremiah Conaway on suicide precautions, or under constant observation, and failed to observe him twice every thirty minutes.

62.     As a result of the Solano County and CFMG Defendants', employees', and agents' deliberate indifference to his serious medical needs, Jeremiah Conaway was left alone and without observation his cell and had enough time to fashion a ligature out of bedding or other fabric material which he used to commit suicide by hanging himself.

63.     Decedent Jeremiah Conaway's death was the result of all Defendants' wrongful conduct, deliberately indifferent denial of necessary and appropriate medical and psychiatric care, failure to provide competent medical and psychiatric care and treatment, failure to communicate his suicide risk to other medical and custodial staff and between transferring facilities, failure to provide competent medical and mental health assessments, failure to transfer Jeremiah Conaway for inpatient psychiatric hospitalization, failure to maintain him on suicide watch and appropriate suicide precautions, failure to house him in a safety cell and under constant observation, and their other conduct that under these circumstances was contrary to generally accepted reasonable jail and medical procedures and standards.

64.     Alternatively or concurrently, Decedent's death was the proximate result of Defendants Solano County, Ferrara, CFMG, Fithian, and Nagar's failure to reasonably train their custody, medical, and mental healthcare staff in the proper and reasonable care of suicidal, mentally ill, and/or emotionally disturbed inmates,

failure to implement and enforce generally accepted, lawful policies and procedures at the jail, failure to institute appropriate training, policies and procedures to prevent suicide, and their deliberate indifference to the serious medical and psychiatric needs of inmates. These substantial failures reflect Defendants Solano County, Ferrara, CFMG, Fithian, and Nagar's policies implicitly ratifying and/or authorizing the deliberate indifference to serious medical needs by their custody, medical, and mental healthcare staff and the failure to reasonably train, instruct, monitor, supervise, investigate, and discipline custody, medical, and mental healthcare staff employed by these Defendants in the handling of suicidal, mentally ill, and/or emotionally disturbed inmates.

65.     Furthermore, Plaintiff is informed and believes and thereon alleges that Defendants Solano County, Ferrara, CFMG, Fithian, and Nagar allow un-credentialed staff, including Licensed Vocational Nurses, and Marriage and Family Therapists, to perform intake.

66.     [Reserved]

## **Claim 1**

### Deprivation of Constitutional Rights – Deliberate Indifference to Serious Medical Needs and Failure to Protect from Harm in violation of the Fourteenth Amendment - 42 U.S.C. § 1983 – Survival Action – Against All Defendants

67.     Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs in this pleading as though fully set forth herein.

68.     At the time of the incident set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under both Amendment VIII and XIV to the United States Constitution to due process of law and the equal protection of the laws, and under the Eighth Amendment to be free from cruel and unusual punishment were in force and effect and the individual defendants who engaged in conduct, as set forth above, who deprived plaintiff of his

right to due process and equal protection, and exposed plaintiff to cruel and unusual punishment by failing to provide medical care, deprived plaintiff individually and as the successor in interest of constitutional rights, violated those rights, and violated Amendment XIV to the United States Constitution.

69.     Defendants, acting under color of state law in their individual and personal capacities, deprived Jeremiah Conaway, a pretrial detainee, of the rights, privileges, and immunities secured by the Eighth and Fourteenth Amendments to the Constitution of the United States of America by subjecting him to – or through deliberate indifference allowing others to subject him to – delay and denial of access to medical or mental health care for a serious but treatable medical or mental health condition, and denying him proper and necessary care for his risk of suicide.

70.     Defendants knew or must have known that Jeremiah Conaway's medical and mental health condition was serious but treatable, and they knew or must have known that he required access to and delivery of urgently needed medical and mental health care; Defendants further had a duty to provide Jeremiah Conaway with: reasonable security; a transfer for inpatient psychiatric hospitalization; housing on suicide watch, and other appropriate suicide precautions to accommodate his serious medical and mental health condition.

71.     Defendants knew or must have known that Jeremiah Conaway required immediate intervention, hospitalization, and a higher level of care than was offered at Solano County jail; Defendants knew or must have known that Jeremiah Conaway urgently required treatment and monitoring for his serious but treatable mental health condition, and that pending such treatment he needed to be on suicide precautions at the Solano County jail, and Defendants knew or must have known that Jeremiah Conaway could not care for himself nor advocate for his urgently needed psychiatric intervention, hospitalization, and appropriate suicide-watch protocols, and Defendants knew or must have known – but disregarded – that

Jeremiah Conaway required supervision in appropriate and indicated housing –
other than a single cell, even in jail.

72.     Defendants, acting under color of law in their individual and personal
capacities, deprived Jeremiah Conaway of the rights, privileges, and immunities
secured by the Fourth Amendment to be free from unreasonable seizure and the
Fourteenth Amendment right to due process of law by, through their deliberate
indifference denying and refusing him necessary medical and mental health care and
treatment, and/or causing others to deny and/or delay medical and mental health
care and treatment.

73.     These Defendants ignored, delayed, or denied Jeremiah Conaway's
urgently needed medical and psychiatric care and treatment; as a result of these
Defendants' deliberate indifference and/or callous disregard for Jeremiah
Conaway's need for medical care and treatment, and their disregard and indifference
to this need, Plaintiff and Decedent suffered damages, pain and suffering, emotional
distress, anxiety, depression, confusion, anguish, fear, despair, grief, loss of
relationships, loss of life, and deprivation of constitutional rights.

74.     By the actions and omissions described above, Defendants violated 42
U.S.C. § 1983, depriving Plaintiffs of the following clearly established and well-
settled constitutional rights protected by the First, Fourth, and Fourteenth
Amendments to the Constitution of the United States of America:

74.1   The right to be free from an unreasonable ongoing seizure of Jeremiah
Conaway as a pretrial detainee as secured by the Fourth and Fourteenth
Amendments;

74.2   The right to be free from deliberate indifference to Jeremiah
Conaway's serious medical and mental health needs while in custody as a pretrial
detainee as secured by the Fourth and Fourteenth Amendments;

74.3    The right to be free from wrongful governmental interference with familial relationships, as well as the right to companionship, society, and support of each other as secured by the First and Fourteenth Amendments.

75.    Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff (individually and on behalf of Jeremiah Conaway) and others would be violated by their acts and omissions.

76.    As a direct and proximate result of Defendants' acts and omissions Plaintiff sustained injuries and damages as set forth herein.

77.    The conduct of the individual Defendants sued in their personal capacities entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and California Code of Civil Procedure §§ 377.20 et seq., and other state and federal law.

## **Claim for Relief No. 2**

### Deprivation of Substantive Due Process Rights in Violation of the First and Fourteenth Amendments to the Constitution of the United States of America – Loss of Parent/Child Relationship (42 U.S.C. § 1983) – Against All Defendants

78.    Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs in this pleading as though fully set forth herein.

79.    The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Jeremiah Conaway's serious medical needs, health and safety, violating his constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Jeremiah Conaway deprived Plaintiff of their liberty interests in the parent-child relationship in violation of their substantive due process

1   rights as defined by the First and Fourteenth Amendments to the United States

2   Constitution.

3       80.    As a direct and proximate result of the aforementioned acts and/or

4   omissions of Defendants, Plaintiff suffered injuries and damages as alleged herein.

5       81.    The aforementioned acts and/or omissions of the Defendants were

6   willful, wanton, malicious and oppressive, thereby justifying and award to Plaintiffs

7   of exemplary and punitive damages to punish the wrongful conduct alleged herein

8   and to deter such conduct in the future.

9                           **Claim for Relief No. 3**

10  Failure to Furnish/Summon Medical Care (Survival Action – California State Law)

11                          – Against All Defendants

12      82.    Plaintiff realleges and incorporates by reference the allegations

13  contained in all paragraphs in this pleading as though fully set forth herein.

14      83.    Defendants owed Jeremiah Conaway a duty of care to provide him

15  immediate medical care.

16      84.    The conduct of Defendants, as alleged herein, including but not limited

17  to the facts that Defendants knew or had reason to know that Jeremiah Conaway was

18  in need of immediate medical care and that Defendants failed to take reasonable

19  action to summon or provide that care, resulting in Jeremiah Conaway's death as

20  alleged herein, violated California state law, including Cal. Govt. Code §§ 844.6 and

21  845.6.

22      85.    The alleged conduct of Defendants was committed within the course

23  and scope of their employment

24      86.    As a direct and proximate result of Defendants' breach, Jeremiah

25  Conaway and Plaintiff suffered injuries and damages causing great pain and leading

26  to Jeremiah Conaway's death, as alleged herein.

27

28

87.     The aforementioned acts and/or omissions of the Defendants were willful, fraudulent, wanton, malicious, and oppressive, thereby justifying an award to Plaintiff of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### Claim for Relief No. 4

Municipal and Supervisory Liability (*Monell* – 42 U.S.C. § 1983) – Against Defendants Solano County, Ferrara, CFMG, Fithian, Nagar and Does 1-20

88.     Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs in this pleading as though fully set forth herein.

89.     The unconstitutional actions and/or omissions of the individual Defendants, including Ferrara, Fithian and Nagar, and Does 1-20, as well as other officers employed by or acting on behalf of the Defendants Solano County and/or CFMG, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants Solano County and CFMG, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Solano County and/or CFMG:

89.1   To deny inmates access to appropriate, competent, and necessary care for serious medical and psychiatric needs;

89.2   To allow Marriage and Family Therapists and other unqualified health care providers to perform intake medical and mental health assessments without clinical supervision by a Registered Nurse or physician;

89.3   To allow a MFT and other Marriage and Family Therapist to perform an unsupervised suicide-risk assessment, and to work without direct clinical supervision;

89.4   To fail to transfer suicidal patients/inmates for inpatient psychiatric hospitalization;

89.5   To prescribe medication, fail to prescribe medication, and fail to determine what other medications or interventions may be appropriate, for a patient without the patient ever being seen by a physician or other qualified health care provider;

89.6   To fail to properly classify, house and/or monitor inmates at risk of suicide or suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions;

89.7   To allow, encourage, and require unlicensed, inadequately trained and/or inadequately supervised staff to decide whether or not to place jail inmates on suicide precautions;

89.8   To fail to institute appropriate training, policies, and procedures for the management of inmates at risk of suicide;

89.9   To fail to institute appropriate training, policies, and procedures to coordinate inmate assessment, placement, suicide watch decisions, suicide precautions and care with medical and mental health services, jail physicians, jail psychiatrists and jail corrections staff, including such personnel at other jails or treatment facilities when inmates are transferred;

89.10 To fail to provide medical or mental health care for inmates with serious medical and mental health needs;

89.11 To fail to use appropriate and generally accepted jail procedures for handling and housing suicidal, mentally ill and/or emotionally disturbed persons, including, but not limited to, the standards of the National Commission on Correctional Health Care Standards for Health Services in Jails, and Title 15 of the California Code of Regulations;

89.12 To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed inmates;

89.13 To cover-up violations of constitutional rights by any or all of the following: (i.) by failing to properly investigate and/or evaluate complaints or incidents related to the claimed customs, polices, practices, and procedures described above in subparagraphs (a) through (l); (ii.) by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity at the Solano County jails as described herein;

89.14 To allow, tolerate, and/or encourage a "code of silence" among employees and Sheriff Office personnel, whereby an employee or member of the department does not provide adverse or truthful information against a fellow employee or member of the department; and

89.15 To use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and reviewing complaints of employee misconduct, including claims made under California Government Code § 910 et seq.

90.    Defendants Solano County and CFMG – through their administrators and policy makers including Ferrara, Nagar and Fithian – failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, manage, and discipline Defendants Ballesteros and Maike, DOES 1-20, and other Solano County and/or CFMG personnel, with deliberate indifference to Plaintiff's constitutional rights, which were thereby violated as described above.

91.    The unconstitutional actions and/or omissions of Defendants Ballesteros, Nagar and Maike and DOES 1-20, and other Solano County and/or CFMG personnel DOES 1–20, as described above, were approved, tolerated and/or ratified by policy-making officers for Solano County and/or CFMG, including Defendants Ferrara, Nagar and Fithian. Plaintiffs are informed and believe, and thereupon allege, the details of this incident have been revealed to the authorized policy makers within Solano County and/or CFMG, including Ferrara, Nagar and Fithian, and that such policymakers have direct knowledge of the fact that Jeremiah

Conaway was unlawfully denied necessary care for his serious medical needs, among other rights and accommodations. Notwithstanding this knowledge, the authorized policy makers within Solano County and/or CFMG have approved of the conduct and decisions of Ballesteros, Nagar and Maike and DOES 1–20 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Jeremiah Conaway. By so doing, the authorized policy makers within Solano County and/or CFMG have shown affirmative agreement with each individual defendant's actions, and have ratified the unconstitutional acts of the individual defendants.

92.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of Defendants Solano County, CFMG and DOES 1-20, were a moving force and/or a proximate cause of the deprivations of Plaintiff's clearly established and well-settled constitutional rights in violation of 42 USC §1983, as more fully set forth above.

93.     Defendants subjected Plaintiff to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions.

94.     As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants Solano County and CFMG, including Ferrara, Nagar and Fithian, as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees as set forth above, and punitive damages against CFMG and the individual Defendants, in their individual capacities.

### **Claim for Relief No. 5**

Violation of Civil Code § 52.1 – Against All Defendants

95.     Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs in this pleading as though fully set forth herein.

96.     By their acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, and with threats, intimidation, and/or coercion, violated Plaintiffs' rights under California Civil Code § 52.1 and the following clearly established rights under the United States Constitution and California Constitution:

96.1    The right to be free from deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and Fourteenth Amendments to the U.S. Constitution and by California Constitution, Article 1, Sections 7 and 13;

96.2    The right to be free from wrongful government interference with familial relationships and Plaintiffs' right to companionship, society, and support of each other, as secured by the First, and Fourteenth Amendments, and as secured by California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq.;

96.3    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1;

96.4    The right to be free from bodily restraint, harm or personal insult as secured by California Civil Code § 43;

96.5    The right to medical care as required by California Government Code § 845.6.

97.     As a direct and proximate result of the Defendants' violation of California Civil Code § 52.1 and of Plaintiff's rights under the United States and California constitutions and laws, Plaintiff sustained injuries and damages, and

against each and every Defendant is entitled to damages, penalties, costs, and attorneys' fees as set forth above, and punitive damages against CFMG and the individual Defendants, including but not limited to all damages allowed by California Civil Code §§ 52 and 52.1 and California law, costs, attorney's fees, and civil penalties.

## Claim for Relief No. 6

### Negligent Supervision, Training, Hiring, and Retention (Survival Action – California State Law)

98.   Plaintiff realleges and incorporates by reference the allegations contained in all paragraphs in this pleading as though fully set forth herein.

99.   Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein.

100.   Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

101.   As a direct and proximate result of Defendants' failure, Jeremiah Conaway and Plaintiffs suffered injuries and damages as alleged herein.

## Claim for Relief No. 7

### Negligence (Survival Actions – California State Law) – Against All Defendants

102.   Plaintiffs re-allege and incorporate by reference paragraphs 1 through 100 as though fully set forth herein.

103.   Defendants failed to comply with professional standards in the provision of medical care to Jeremiah Conaway by failing to appropriately assess and evaluate his medical needs, failing to provide timely and emergency medical attention, failing to provide appropriate medical treatment, and failing to adopt the

1  minimum policies, procedures, and training necessary to ensure identification of and

2  response to of medical emergencies.

3      104.   These Defendants also failed to appropriately supervise, review, and

4  ensure the competence of medical staff's and custody staff's provision of treatment

5  to Jeremiah Conaway, and failed to enact appropriate standards and procedures that

6  would have prevented such harm to him.

7      105.   Together, these Defendants acted negligently and improperly, breached

8  their respective duties, and as a direct and proximate result, Plaintiffs suffered

9  injuries and damages as alleged herein.

10     106.   The negligent conduct of Defendants was committed within the course

11 and scope of their employment.

12                    **Claim for Relief No. 8**

13 (Violations of Title II of the ADA, the Rehabilitation Act, and Title III of the ADA)

14           Plaintiff against Defendants Solano County and CFMG

15     107.   Plaintiff realleges each and every paragraph in this complaint as if fully

16 set forth here.

17     108.   Congress enacted the Americans with Disabilities Act ("ADA") upon a

18 finding, among other things, that "society has tended to isolate and segregate

19 individuals with disabilities" and that such forms of discrimination continue to be a

20 "serious and pervasive social problem."42 U.S.C. § 12101 (a)(2).

21     109.   Jeremiah Conaway was a "qualified individual" with a mental illness,

22 disability and medical impairments that limited and/or substantially limited his

23 ability to care for himself and control his mental or physical health condition as

24 defined under the ADA, 42 U.S.C. § 12131 (2), and Section 504 of the

25 Rehabilitation Act ("RA") of 1973, 29 U.S.C. §794; 28 C.F.R. 42.540(k).

26     110.   Defendant Solano County is a public entity under Title II of the ADA.

27 42 U.S.C. § 12131 (1)(A); Title II of the ADA applies generally to jail "services,

28

programs, or activities." 42 U.S.C. § 12132. Defendant Solano County's jails and mental-health services therefore are covered under Title II of the ADA, and, respondeat superior liability applies to Title II claims. Defendant Solano County is therefore liable under Title II of the ADA for the unlawful acts of its private-entity agent CFMG under Title II of the ADA, 42 U.S.C. § 12312 et seq.

111.   Plaintiff is informed and believes, and thereon alleges, that Defendant Solano County receives federal assistance and funds, and is therefore subject to the Rehabilitation Act, 29 U.S.C. § 794; Defendant Solano County is within the mandate of the RA that no person with a disability may be "excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

112.   Under the ADA, Solano County is mandated to develop and effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

113.   Title III of the ADA, 42 U.S.C. §§ 12181-89, applies to private entities. 42 U.S.C. 12181(6); CFMG, a corporation engaged in interstate commerce, operates for-profit business establishments providing health care, 42 U.S.C. § 12181 (7)(F), within the Solano County jail and CFMG therefore operates places of public accommodation and is subject to Title III of the ADA.

114.   Title III of the ADA provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals." 42 U.S.C. § 12182 (b)(1)(A)(iii)(emphasis added). Under Title III of the ADA, CFMG is mandated not to discriminate against any qualified individual

"on the basis of disability in the full and equal enjoyment of the goods, services, facilities. Privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a)

115.   At all material times and as described herein, Jeremiah Conaway (1) was an individual with a disability; (2) was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including Solano County's and CFMG's jail services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the Solano County or CFMG services, programs or activities or was otherwise discriminated against by Solano County and CFMG; and (4) such exclusion, denial or benefits or discrimination was by reason of his disability.

116.   As described herein, Solano County and CFMG failed to reasonably accommodate Jeremiah Conaway's disability in the course of jailing him and denying him medical care, causing him to suffer greater injury in the process than other detainees or arrestees, including death. Solano County's and CFMG's failures to accommodate Jeremiah Conaway's disability include but are not limited to:

a. causing the violation of Jeremiah Conaway's rights through all customs, policies, and practices identified above;

b. failing to use lawful and appropriate policies, practices, and procedures for a mentally ill and/or emotionally disturbed person under the circumstances;

c. failing to transfer Jeremiah Conaway to an inpatient psychiatric facility;

d. failing to provide Jeremiah Conaway with competent and appropriate medical, mental health, and psychiatric care;

e. failing to institute suicide precautions for Jeremiah Conaway;

1       f. placing Jeremiah Conaway in isolated, segregated housing with no

2  appropriate observation or mental health follow-up;

3       g. failing to develop an effective, integrated, comprehensive system for

4  the delivery of all services to persons with mental disabilities, and to ensure that the

5  personal and civil rights of persons who are receiving services under its aegis are

6  protected;

7       h. other failures to provide accommodations as the evidence in this case

8  may show.

9     117.  As a direct and proximate result of Solano County's and CFMG's

10  violations of the ADA and RA, Plaintiff sustained serious and permanent injuries

11  and are entitled to damages, penalties, costs and attorneys' fees as set forth herein.

12  **Claim for Relief No. 9**

13  <u>Wrongful Death – California Code Civ. Proc. § 377.60 – Against All Defendants</u>

14     118.  Plaintiff realleges each and every paragraph in this complaint as if fully

15  set forth here.

16     119.  Jeremiah Conaway's death was a direct and proximate result of the

17  aforementioned wrongful and/or negligent acts and/or omissions of Defendants;

18  Defendants' acts and/or omissions thus were also a direct and proximate cause of

19  Plaintiff's injuries and damages, as alleged herein.

20     120.  As a direct and proximate result of Defendants' wrongful and/or

21  negligent acts and/or omissions, Plaintiff incurred expenses for funeral and burial

22  expenses in an amount to be proven.

23     121.  As a direct and proximate result of Defendants' wrongful and/or

24  negligent acts and/or omissions, Plaintiff suffered the loss of services, society, care,

25  and protection of the decedent, as well as the loss of the present value of his future

26  services to his mother. Plaintiff is further entitled to recover prejudgment interest.

27

28

**Prayer**

Plaintiff seeks judgment as follows:

1.  General, special and compensatory damages against each defendant, jointly and severally, in accordance with proof;

2.  An award of punitive and exemplary damages against each defendant (except the municipal defendant) to be determined according to proof and in an amount sufficient to make an example of those defendants and to deter future misconduct;

3.  An award of attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 1988 and Civil Code § 52.1;

4.  Costs of suit;

5.  Prejudgment and post-judgment interest as permitted by law; and

6.  Such further relief as the Court deems just and proper.

DATED: April __13__, 2020                          Jeff Dominic Price

By _____/s/ Jeff Dominic Price_____
Jeff Dominic Price, Esq.
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a jury trial as to all claims for relief.

DATED: April __12__, 2020                          Jeff Dominic Price

By _____/s/ Jeff Dominic Price_____
Jeff Dominic Price, Esq.
Attorney for Plaintiff