UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LEMOON,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-02552-PJH<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND DENYING LETTER REQUEST FOR ADDITIONAL DEPOSITIONS**<br><br>Re: Dkt. Nos. 63, 80 |

Before the court is plaintiff Teresa LeMoon's ("plaintiff") motion for leave to file a second amended complaint. Dkt. 62 (original motion); Dkt. 63 (corrected motion). Also before the court is plaintiff's letter requesting that the court permit her to take a total of 17 depositions. Dkt. 67 (original letter); Dkt. 68 (first revised letter); Dkt. 80 (second revised letter). Both the motion for leave and the letter request are suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court **GRANTS** the motion for leave and **DENIES** the letter request for the following reasons.

**BACKGROUND**

On April 13, 2020, plaintiff filed the instant action against the County of Solano (the "County") and various other persons and entities (collectively, "defendants"). Dkt. 1 (Compl.) ¶¶ 5-15. The court will specify the relevant non-County defendants below.

In her original complaint, plaintiff alleged that, on March 4, 2019, police arrested her now-deceased son, Jeremiah Conaway ("Conaway"), for a suspected probation violation. Id. ¶¶ 21. Between March 4, 2019 and April 10, 2019, the County held

Conaway in pretrial detention at one of its jail facilities. Id. ¶¶ 28-48. Conaway had a history of mental illness stemming from depression and methamphetamine abuse. Id. ¶¶ 24-27, 45. Plaintiff alleged that the County had constructive notice of such illness based on its prior medical and arrest records acknowledging Conaway as a "mental health patient" and showing his "serious medical and mental health needs." Id. ¶¶ 26, 29, 45.

While detained, Conaway was mute and generally non-communicative. Id. ¶¶ 31, 34. He often refused recreation, dinner, and visits. Id. ¶¶ 32-35, 38-43. According to plaintiff, defendants did not "institute suicide precautions" or place Conaway on "suicide watch." Id. ¶ 36. They also did not provide him medication. Id. ¶¶ 34, 37, 42-44, 46. For part of his detention, defendants kept Conaway in an isolation cell. Id. ¶ 49. On April 10, 2019, Conaway committed suicide using bedding materials to hang himself. Id. ¶ 47.

As Conaway's mother, plaintiff brought this action in both her individual capacity and as Conaway's successor in interest. Id. ¶ 3. At core, plaintiff alleged that defendants acted with deliberate indifference when failing to attend to Conaway's medical needs, when failing to take suicide precautions, when failing to adopt necessary healthcare policies and procedures, and when failing to train the jail staff attending to Conaway's healthcare needs. Id. ¶¶ 49-65. Based on those failures, plaintiff alleged nine claims for negligence, wrongful death, and federal civil rights violations. Id. ¶¶ 67-121.

On August 6, 2020, plaintiff filed her operative first amended complaint ("FAC"). Dkt. 26 (FAC). In her FAC, plaintiff adds eight other individual defendants. Id. ¶¶ 8, 10, 12, 14-16, 18-19. Such defendants include an unidentified Dr. Richard Roe, M.D., who allegedly acted as the head psychiatrist at County jails. Id. ¶ 12.

Plaintiff maintains her factual allegations concerning the care provided to Conaway. Compare Compl. ¶¶ 1, 21-49 with FAC ¶¶ 26-42, 65-82. She advances materially similar deliberate indifference theories of liability to those alleged in her original complaint. Compare Compl. ¶¶ 49-65 with FAC ¶¶ 83-98. Plaintiff also maintains the same nine claims. Compare Compl. ¶¶ 67-121 with FAC ¶¶ 124-79.

In her FAC, plaintiff adds allegations detailing the internal records of certain social

workers and jail personnel noting Conaway's perceived health and behavior between March 24, 2019 and April 9, 2019. Id. ¶¶ 43-64. Plaintiff also adds allegations detailing jail healthcare standards set by the National Commission on Correctional Healthcare ("NCCHC"). Id. ¶¶ 98-116. Plaintiff suggests that an individual entity defendant contracting with the County to provide mental health services, California Forensic Medical Group, Inc. ("CFMG"), id. ¶ 7, agreed to satisfy those standards, id. ¶¶ 98, 117-23. In the FAC, plaintiff adds another entity defendant, Wellpath, LLC ("Wellpath"). Id. ¶ 8. Plaintiff alleges CFMG later "merged into" Wellpath. Id. ¶ 5. Plaintiff jointly refers to these entities as "CFMG-Wellpath." Id. ¶¶ 5, 8. However, because both entities are named as separate defendants, the court will refer to each distinct entity.

On August 20, 2020, the court held its initial case management conference. Dkt. 34. On August 21, 2020, the court issued its case management and pretrial order. Dkt. 35. In it, the court set June 28, 2021 as the fact discovery cutoff. Id. The court also set the last day to file a motion to file an amended as:

> no later than 90 days before fact discovery cutoff date . . . so sufficient time remains to conduct discovery on added claims or parties. Id.

The court also noted that:

> **Doe defendants must be identified** by this deadline or they will be dismissed. Id. (emphasis in the original).

Thus, when the court entered its pretrial order, the last day to file a motion for leave to file an amended pleading was March 30, 2021.

Between August and November 2020, defendants filed their answers to the FAC. Dkts. 31, 39, 45, 47, 51. To date, all remaining defendants named in the FAC, except nominal defendant William Conaway (Jeremiah's father), have appeared in this action.

On March 24, 2021, plaintiff filed a letter brief requesting in part that the court extend the fact discovery cutoff from June 28, 2021 to July 28, 2021. Dkt. 54 at 1. Plaintiff represented that "[a]ll parties, including all [d]efendants . . . agree to this request." Id. Plaintiff also signaled her intent to file an amended complaint, stating that she "wants

3

to complete the deposition . . . before moving to file an amended complaint." Id. at 2. Defendants did not file any opposition to plaintiff's request. On March 25, 2021, the court granted plaintiff's requested extension, id., correspondingly extending the deadline to file a motion for leave to file an amended pleading to April 29, 2021.

On April 28, 2021, plaintiff filed a motion for leave to file the subject second amended complaint ("SAC"). Dkt. 61. Plaintiff attached her proposed SAC to that motion. Dkt. 61-1 (SAC). On April 29, 2021, plaintiff filed a corrected motion for leave to file the SAC. Dkt. 63. The corrected motion is the focus of the instant order.

In terms of the SAC's substantive additions, plaintiff slightly elaborates on her prior allegations concerning the lack of medical attention that Conaway received while in County custody prior to his death. SAC ¶¶ 75, 107, 115-16. She adds allegations detailing Conaway's 2016 through 2018 experience in County jail, id. ¶¶ 22-40, and Conaway's late-2018 through 2019 experience in residential drug treatment centers, id. ¶¶ 41-42.

In terms of the SAC's party changes, plaintiff names two other individual defendants, Wellpath's chief executive officer, Kipp Hallman ("Hallman"), id. ¶¶ 5, 14, and Dr. Don Purcell, M.D., ("Purcell"), id. ¶ 11. Plaintiff removes Officer R. Castillo ("Castillo") as a defendant.[1]

Relatedly, plaintiff includes references to two other entities, Correctional Medical Group Companies, Inc. ("CMGC") and H.I.G. Capital ("H.I.G"). Id. ¶¶ 46-59, 67-68. Plaintiff does not name either entity as a defendant. Instead, plaintiff alleges that H.I.G is a private equity firm that acquired CFMG in 2013 and, following that acquisition, renamed CFMG to CMGC. Id. ¶¶ 50, 51. Plaintiff alleges that the "separate personalities of H.I.G. and CFMG are blurred," with H.I.G. effectively controlling CFMG and indemnifying CFMG for CFMG's "act and conduct." Id. ¶¶ 53-55. According to plaintiff, H.I.G., CFMG, and

---

[1] Plaintiff also alleges that, because the court recently entered default against nominal defendant William Conaway, Dkt. 60, the court should "dismiss" him. SAC ¶ 17. The court need not adjudicate that request at this time.

4

1  Wellpath "attempt to use the corporate form as a shield against personal liability and
2  accountability for the harm caused to the mentally ill in jails." Id. ¶ 59.

On May 16, 2021, CFMG and Wellpath, along with co-defendants John Maike, MFT, Marni Ballesteros, R.N., Dinesh Nagar, M.D., Raymond Herr, M.D., Tashi Choera, R.N., and Michelle Bowie R.N. (collectively, the "medical defendants"), filed an opposition to plaintiff's motion. Dkt. 64. The remaining defendants did not file any opposition to the motion.

**DISCUSSION**

**A. Legal Standard**

Under Rule 15, a party generally may amend its pleadings as a matter of course within 21 days of their service. Fed. R. Civ. Pro. 15(a)(1). After that, a party may amend its pleadings only if it obtains the opposing party's written consent or leave of court. Fed. R. Civ. Pro. 15(a)(2). In the latter scenario, courts "should freely give leave when justice so requires." Id.

When deciding whether to grant leave, courts consider the following five factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013). In the Ninth Circuit, "[n]ot all of the factors merit equal weight," rather "it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

"The party opposing amendment bears the burden of showing prejudice." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. 1987). Absent such showing, or a strong showing under the above remaining factors, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC, 316 F.3d at 1052 (emphasis in the original).

**B. Motion for Leave**

In their briefing, plaintiff and the medical defendants dispute the propriety of

plaintiff's request under only the prejudice, undue delay, bad faith, and futility factors.

### 1. Prejudice

In their opposition, the medical defendants assert that they would suffer two forms of prejudice if the court permitted plaintiff's request. First, they characterize the SAC as making "a massive change in the nature of the allegations." Dkt. 64 at 2, 9, 10. To support that argument, the medical defendants point to the SAC's allegations concerning H.I.G.'s control of CFMG and Wellpath. Id. They reason that, because H.I.G. "has not been the subject of any discovery in this case," id. at 2, 5, 7, their defense will suffer "severe" prejudice, id. at 2, 7.

Second, the medical defendants argue that neither Purcell nor Hallman "would be able to prepare and file initial pleadings and thereafter participate in the minimal time" permitted by the court's scheduling orders. Id. at 2.

The court concludes that both assertions are unpersuasive. With respect to their first argument, the medical defendants fail to proffer any evidence showing that, at the time plaintiff filed this motion, they had even propounded any discovery. In support of her reply, plaintiff's counsel, Jeff Price, filed a declaration, signed May 20, 2021, in which he stated "[a]s of today, to my knowledge, the CFMG defendants have conducted no discovery in this case." Dkt. 66 at 5 ¶ 3. Without having conducted *any* discovery in this action, the medical defendants cannot reasonably claim that their "defense" would suffer prejudice. At least when plaintiff filed her request, such "defense" did not exist.

In any event, the court closely reviewed and (painfully) compared the complaint, FAC, and SAC. The court disagrees with the medical defendants' characterization that the SAC works a sea-change from its FAC counterpart. Critically, in the SAC, plaintiff continues to advance the same deliberate indifference theories of liability. Compare FAC ¶¶ 83-98, 117-20 with SAC ¶¶ 125-140, 159-65. She maintains her factual allegations about Conaway's intake, care, behavior, and death while in County custody between March 4, 2019 and April 10, 2019. Compare FAC ¶¶ 33-78 with SAC ¶¶ 75-121. She also maintains the same nine claims. Compare FAC ¶¶ 124-179 with SAC ¶¶ 169-224.

Given the above, the court finds that the medical defendants' first argument lacks merit.

With respect to their second argument, the medical defendants are correct that, under the existing deadlines, both Purcell and Hallman would have little time to respond to the SAC or conduct discovery. Importantly, the court set the dispositive motion hearing deadline for October 6, 2021, Dkt. 35, which is only three months away. However, because the court previously permitted the parties to expand the fact discovery cutoff, Dkt. 55, the court incidentally extended the deadline for the parties to file any amended pleading and identify any Doe defendants, Dkt. 35. By filing her request on April 29, 2021, plaintiff complied with that deadline. Under these circumstances, the court may revisit its pretrial and trial dates to avoid any prejudice to Hallman or Purcell. Given that, the court finds that the medical defendants' second argument is a non-issue.

For the above reasons, the court concludes that the prejudice factor does not overcome the presumption in favor of permitting plaintiff leave to file the SAC.

**2. Undue Delay**

As noted above, plaintiff filed the subject request by the April 29, 2021 deadline for filing a motion for leave to file an amended pleading. In her opening brief, plaintiff explains that she learned about the need to substitute Purcell for the FAC's "Richard Roe, M.D." Doe defendant during discovery. Dkt. 63 at 4. Similarly, she explains that "extensive discovery" has led her to determine that Hallman should be added as a defendant. Id. The court finds those explanations plausible. In light of that finding, and the timeliness of plaintiff's request, the court concludes that plaintiff did not act with any "undue" delay when seeking to name Purcell and Hallman as defendants to this action.

The court further concludes that plaintiff did not act with any such delay when raising any of the SAC's other factual allegations, including those pertaining to H.I.G.'s purported control of the entity defendants. Again, plaintiff timely filed her request. Under the circumstances at hand, the court holds that the undue delay factor does not overcome the presumption in favor granting plaintiff leave to file the SAC.

///

### 3. Futility

In their opposition, the medical defendants vaguely suggest that plaintiff's attempt to name Hallman as a defendant would be futile because Hallman has "nothing to do" with medical operations or policies at the subject jail, he is not a physician, and his job is limited to "business activities." Dkt. 64 at 4, 11. The medical defendants also suggest that the SAC's references to H.I.G. are legally irrelevant because plaintiff fails to explain how that entity is "connected" to "the provision of care" at the subject jail facility. Id. at 8.

The court finds both suggestions unpersuasive. To the extent Hallman wishes to file a Rule 12(b)(6) motion challenging the sufficiency of the allegations underlying the claims against him, he will have his opportunity to do so. That challenge, however, is for **Hallman** to advance once he has been served—not the medical defendants.

The medical defendants might be correct that the H.I.G. related allegations are neither here nor there. However, at this stage, where plaintiff enjoys a presumption in favor of amendment, the medical defendants mistakenly assume that plaintiff must affirmatively refute futility. That is not the law. Eminence Capital, LLC, 316 F.3d at 1052 ("Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.") (emphasis in the original).

### 4. Bad Faith

In their opposition, the medical defendants suggest that two circumstances indicate that plaintiff acted in bad faith when seeking leave to file the SAC: (1) plaintiff's decision to refer to H.I.G. in the SAC without also naming that entity as a defendant; and (2) the proximity in time between plaintiff's request and the discovery cutoff. Dkt. 64 at 6.

Again, the court concludes that both such suggestions are unpersuasive. With respect to the first suggestion, the medical defendants do not identify any basis to require plaintiff to name H.I.G. as a defendant simply because she wishes to refer to that entity. With respect to the second suggestion, the court understands that there is always a possibility of gamesmanship under the sort of circumstances at hand. However, based

8

on the record before it, the court cannot find that plaintiff acted with a dilatory intent when seeking leave to file the SAC. Accordingly, the court concludes that the bad faith factor does not overcome the presumption in favor of granting such leave.

\*   \*   \*

For the above reasons, the court grants plaintiff's motion for leave to file the SAC. The court orders plaintiff to immediately file the proposed SAC (Dkt. 61-1) on the docket as a separate entry. Following that filing, plaintiff must immediately serve Purcell and Hallman with the SAC as well as a copy of this order. Purcell and Hallman must respond to the SAC within the time permitted under Rule 15. Depending on their response (i.e., answer versus Rule 12(b) motion), the court may issue a revised pretrial order. Unless and until it rules otherwise, the court maintains its existing discovery deadlines with respect to the claims between those parties that have appeared in this action. The parties should not assume that the court will keep open discovery on this entire litigation simply because Purcell and Hallman are now defendants to this action.

The deadline for seeking leave to file any amended pleading under Rule 15 has passed. If plaintiff later seeks leave to file another amended pleading, she must satisfy Rule 16(b)(4)'s good cause standard. The court cautions that its application of that standard is exacting. The court will likely deny any future requests to amend by plaintiff.

### C. Letter Request for Additional Depositions

On May 25, 2021, plaintiff filed a letter brief requesting that the court permit her to take a total of 15 depositions. Dkt. 67. Later that day, plaintiff filed a revised letter brief requesting the same relief. Dkt. 68. On June 23, 2021, plaintiff filed a second revised letter brief instead requesting that the court permit her to take 17 depositions. Dkt. 80.

The court denies plaintiff's request. Pursuant to this court's standing order,[2] the parties must meet and confer before filing a discovery motion.[3] In her letter briefs,

---

[2] https://cand.uscourts.gov/judges/hamilton-phyllis-j-pjh/
[3] The court understands that plaintiff addressed her second revised letter brief to Magistrate Judge Westmore. Judge Westmore maintains a similar requirement in her standing order. https://cand.uscourts.gov/judges/westmore-kandis-a-kaw/

9

plaintiff failed to provide any indication showing that she satisfied (or attempted to satisfy) that requirement. Plaintiff may still meet and confer with defendants concerning the additional depositions. If the parties are unable to reach a resolution following such conference, plaintiff may renew her request by filing a joint letter brief detailing her and defendants' positions on this matter. In it, plaintiff must offer a plan to take all depositions by the fact discovery cutoff. Plaintiff must file any such letter by **Friday, July 16, 2021**.

One final point. The court notes that it will likely deny any renewed request as untimely. As previously stated, this court issued its pretrial order on August 21, 2020. Dkt. 35. Thus, plaintiff waited nine months—i.e., two months before the close of fact discovery—to request the subject additional depositions. In her second revised letter, plaintiff failed to offer any specific justification for that delay. She also fails to explain how the relief requested is appropriate when, as of her second revised request, she had taken *only two* depositions in this action. Dkt. 81 at 1-2. Under these circumstances, the court would likely find it unfair to require defendants to defend any additional depositions at such a late juncture in discovery. In any renewed letter, plaintiff must explain why the timing of her request is appropriate despite that unfairness to defendants.

**IT IS SO ORDERED.**

Dated: July 7, 2021

Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge