Jeff Dominic Price  |  SBN 165534
730 Arizona Avenue
Santa Monica, California 90401-1702
jdp@jdpfirm.com
T. 310.451.2222

Attorney for the Plaintiff

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| TERESA LeMOON, Individually and as Successor in Interest of Decedent JEREMIAH CONAWAY,<br><br>Plaintiff,<br><br>vs.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., et al.,<br><br>Defendants | No. 4:20-cv-02552-PJH<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT FILED BY SOLANO COUNTY DEFENDANTS**<br><br>DATE:          October 7, 2021<br>TIME:          1:30 p.m.<br>PLACE:        Courtroom 3<br>TRIAL DATE:  February 7, 2022 |

## **Table of Contents**

**Page**

Table of Authorities .......................................................................................... iii

Table of Abbreviations .................................................................................... vii

Introduction ...................................................................................................... 1

Memorandum of Points and Authorities ........................................................... 1

I.    Introduction ................................................................................................ 1

II.   Legal Standard............................................................................................ 3

III.  Summary Judgment as to the Municipal Liability Claim against the County of
     Solano and Sheriff Thomas A. Ferrara in his official capacity should be denied .... 4

     A.    Claim for inadequate medical care – *Monell* liability .................................. 4

           1.    SCSO maintained a policy of housing inmates who were on
                 MHO because they were a threat to themselves in lockdown solo
                 cells with known suicide hazards ....................................................... 8

           2.    Failure to train CFMG mental health staff on MHO and SCSO
                 Policy 9.012 – Special Management Inmate Observation  .............. 11

           3.    CFMG policies and customs ............................................................ 11

           (a)   CFMG had no MHO policy ............................................................. 11

           (b)   CFMG had no policy requiring a consultation with a psychiatrist
                 for inmates who were on MHO because they were a threat to
                 their own safety ............................................................................ 12

           (c)   CFMG had no policy requiring mental health staff to review an
                 inmate's prior electronic Solano County jail medical records in
                 order to complete a mental health assessment plan for inmates
                 on MHO ........................................................................................ 13

           (d)   CFMG had no policy requiring that Priority 1 tasks in CorEMR
                 be performed at the next sick call and a custom of treating
                 Priority 1 tasks as routine ............................................................ 14

           4.    Delegation and implied ratification.................................................. 14

           5.    *Canton* liability.............................................................................. 15

B.    Claim 2 – deprivation of familial relationship under the substantive due process component of the 14th Amendment – *Monell* liability ................... 16

IV.    Summary Judgment should be denied to Sheriff Ferrara in his individual capacity.   17

A.    Claim for inadequate medical care – supervisory liability ............................ 17

1.    SCSO policy of housing inmates placed or retained on MHO because they were a threat to themselves in lockdown solo cells with known suicide hazards ................................................................ 18

2.    Failure to train CFMG mental health staff on MHO and SCSO Policy ...................................................................................... 19

3.    Delegation ...................................................................... 19

(a)    CFMG policies and customs ........................................... 19

B.    Claim for deprivation of familial relationship ................................................ 20

V.    Sheriff Ferrara is not entitled to qualified immunity ................................................ 20

Conclusion .................................................................................................................... 20

1

## **Table of Authorities**

2

**Page**

3

Reported Decisions

4   *Anderson v. Liberty Lobby, Inc.*,

5       477 U.S. 242 (1986) .................................................................................  3

6   *Armstrong v. Schwarzenegger*,

7       622 F.3d 1058 (9th Cir. 2010) ................................................................ 15

8   *Castro v. County of Los Angeles*,

9       833 F.3d 1060 (9th Cir. 2016) (en banc) ................................... 5, 6, 8, 16

10  *Celotex Corp. v. Catrett*,

11      477 U.S. 317 (1986) .................................................................................  4

12  *City of Canton v. Harris*,

13      489 U.S. 378 (1989) ............................................................................ 5, 12

14  *City of St. Louis v. Praprotnik*,

15      485 U.S. 112 (1988) .................................................................................  5

16  *Conn v. City of Reno*,

17      591 F.3d 1081 (9th Cir. 2010) ............................................................. 6, 7

18  *Cortez v. County of Los Angeles*,

19      294 F.3d 1186 (2002) ...............................................................................  5

20  *Crowley v. Bannister*,

21      734 F.3d 967 (9th Cir. 2013 ................................................................... 18

22  *Estelle v. Gamble*,

23      429 U.S. 97 (1976) ...................................................................................  7

24  *Farmer v. Brennan*,

25      511 U.S. 825 (1994) .............................................................................. 7, 8

26  *Foster v. Runnels*,

27      554 F.3d 807 (9th Cir. 2009) ....................................................................7

28

*Fresno Motors, LLC v. Mercedes Benz USA, LLC,*

   771 F.3d 1119 (9th Cir. 2014)....................................................................... 3

*Gibson v. County of Washoe,*

   290 F.3d 1175 (9th Cir. 2002) ......................................................... 5, 6, 12

*Gordon v. County of Orange,*

   888 F.3d 1118 (9th Cir. 2018) ................................................................... 6

*Graham v. Connor,*

   490 U.S. 386 (1989) ................................................................................... 6

*Hansen v. Black,*

   885 F.2d 642 (9th Cir. 1989) ................................................................... 15

*Hope v. Pelzer,*

   536 U.S. 730 (2002) ................................................................................. 20

*Hyland v. Wonder,*

   117 F.3d 405 (9th Cir. 1997) ................................................................... 15

*Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO*
  *v. Martin Jaska, Inc.,*

   752 F.2d 1401 (9th Cir. 1985) ................................................................... 4

*Johnson v. Duffy,*

   588 F.2d 740 (9th Cir. 1978) ..................................................................... 5

*Kingsley v. Hendrickson,*

   135 S. Ct. 2466 (2015) ............................................................................... 6

*Larez v. City of Los Angeles,*

   946 F.2d 630 (9th Cir. 1991)................................................................... 17

*Lemire v. Cal. Dep't of Corr. & Rehab.,*

   726 F.3d 1062 (9th Cir. 2013) ............................................................ 7, 17

*Long v. County of Los Angeles,*

   442 F.3d 1178 (9th Cir. 2006)................................................................. 12

*M. H. v. County of Alameda,*

90 F. Supp. 3d 889 (N.D.Cal. 2013) ................................................................27-28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574 (1986). ......................................................................................... 3

*Monell v. Department of Social Services*,

436 U.S. 658 (1978). ................................................................................5, 8, 15

*Nicholson v. City of Los Angeles*,

935 F.3d 685 (9th Cir. 2019). ......................................................................... 17

*Nissan Fire & Marine Ins. Co. v. Fritz Co.*,

210 F.3d 1099 (9th Cir. 2000) ......................................................................... 4

*Oviatt By & Through Waugh v. Pearce*,

954 F.2d 1470 (9th Cir. 1992) ....................................................................5, 12

*Pembaur v. City of Cincinnati*,

475 U.S. 469 (1986) ...................................................................................5, 15

*Porter v. Osborn*,

546 F.3d 1131 (9th Cir. 2008) ........................................................................ 17

*Prasad ex rel. Prasad v. County of Sutter*,

958 F. Supp. 2d 1101 (E.D. Cal. 2013) .......................................................... 17

*Ressy v. King Cnty.*,

520 Fed.Appx. 554 (9th Cir. 2013) .................................................................. 6

*Rochin. v. California*,

342 U.S. 165 (1952). ....................................................................................... 17

*Rice ex rel. Rice v. Correctional Medical Services*,

675 F.3d 650 (7th Cir. 2012)........................................................................... 16

*Rosenbaum v. Washoe County*,

663 F.3d 1071 (9th Cir. 2011). ....................................................................... 17

*Streit v. Cty. of L.A.*,

236 F.3d 552 (9th Cir. 2001) ........................................................................... 4

*Taylor v. Riojas*,

--- U.S. ---, 141 S.Ct. 52 (2020). ................................................................. 20

*Thomas v. Newton Int'l Enters.*,

   42 F.3d 1266 (9th Cir. 1994) ................................................................. 4

*Wilkinson v. Torres*,

   610 F.3d 546 (9th Cir. 2010). ................................................................. 23

*Youngberg v. Romeo*,

   457 U.S. 307 (1982) ................................................................................ 6

*Young v. County of Los Angeles*,

   655 F.3d 1156 (9th Cir. 2011) ................................................................. 13

*Zamani v. Carnes*,

   491 F.3d 990 (9th Cir. 2007) ................................................................... 4

<u>Federal Statutes</u>

42 U.S.C § 1983 ............................................................................. 5, 7, 12, 15

<u>Federal Rules of Civil Procedure</u>

Fed. R. of Civ. P. 56 ...............................................................................  3

<u>State Regulations</u>

California Code of Regulations, Title 15, § 1006 ............................................ 8, 15, 18

California Code of Regulations, Title 15, § 1030 .................................................... 14

**Table of Abbreviations**

| | |
|---|---|
| "LeMoon" or "Plaintiff" | Plaintiff Teresa LeMoon |
| "Conaway" | Jeremiah Conaway |
| "COS" | County of Solano |
| "SCSO" | Solano County Sheriff's Office |
| "Sheriff Ferrara" or "Ferrara" | Solano County Sheriff-Coroner Thomas A. Ferrara |
| "CFMG" | Defendant California Forensic Medical Group, Inc. |
| "JCDF" | Solano County Justice Center Detention Facility jail |
| "CDF" | Solano County Claybank Detention Facility jail |
| "SCF" | Solano County Stanton Correctional Facility jail |
| "SCSO Policy" | Solano County Sheriff's Office Custody Division Policy & Procedure Manual, COUNTY 000246-000560 |
| "CFMG Policy" | Correctional Medical Group Companies Policy and Procedure Manual Solano County Adult Detention Facilities 10/2018, CFMG2018_0001-0180 |
| "MHO" | Mental Health Observation |
| "Exh" | Exhibit |
| "COS MSJ" | Motion for Summary Judgment filed by Defendants County of Solano and Thomas A. Ferrara, Dkt. 107. |

| "CFMG MSJ" | Motion for Summary Judgment filed by |
| | Defendants California Forensic Medical |
| | Group, Inc., Wellpath, LLC., John Maike, |
| | Michelle Bowie, Marni Ballesteros, Dr. |
| | Raymond Herr, Dr. Donald Purcell, and Dr. |
| | Dinesh Nagar, Dkt. 109 |
| "Metzner Decl." | Declaration of Jeffrey L. Metzner, M.D. |
| "JDP Decl." | Declaration of Jeff Dominic Price |

1    **Memorandum of Points and Authorities**

2    **I.     Introduction**

3            On April 10, 2019, sometime after approximately 5:10 a.m., Jeremiah Conaway, 34 years

4    old, committed suicide by hanging himself from the top railing of his bunk bed with a bedsheet in

5    the Justice Center Detention Facility ("JCDF").  Castillo RT 9, attached to Declaration of Jeff

6    Dominic Price ("JDP Decl.")[1]; Redacted Coroner's Report, Exh 10.  Conaway's cell – N-8 – was an

7    isolation cell that contained a bunk bed that was approximately 5-1/2 feet in height and bed sheets.

8    Ballesteros RT 44; Castillo RT 9.  N module contained only 9 cells. Castillo RT 15.  On April 8,

9    2019, after Conaway, who had been selectively mute since his arrest and arrival at Solano County

10   jail and who had been on Mental Health Observation ("MHO") status since April 1, 2019, wrote

11   "Meds?" on a piece of paper (Exh 327-23), Defendant Marni Ballesteros, a Psych R.N., created a

12   Priority 1 Task for Defendant Don Purcell, M.D., the on-site Psychiatrist, to assess Conaway for

13   medication on April 9, 2019. CorEMR electronic medical record for Jeremiah Conaway, Exh 327-

14   23 and 327-24; CFMG 30(b)(6) RT 22. Defendant Purcell arrived at JCDF at approximately 6:00-

15   6:30 a.m. on April 9, 2019, and he saw the Priority 1 Task to assess Conaway for medication in his

16   task list on CorEMR. Purcell RT 5 ("[H]e was on my list to see that day."). But Dr. Purcell never

17   saw Jeremiah Conaway.  He testified that he had to be at an 8:00 a.m. meeting at the California

18   Medical Facility, located at 1600 California Drive, Vacaville, California. Purcell RT 14-15. Nor did

19   Purcell review Conaway's medical records in the CorEMR system. Purcell RT 35. Had he reviewed

20   the records he would have seen that Conaway's mother informed Ballesteros that Conaway had

21   become paranoid in the last few months, in contrast to Purcell's observation on September 21, 2018.

22   Exh 327-24; 327-38.  Nurse Practitioner Sandor Hornyak could not prescribe Celexa to Conaway

23   and the task created by Ballesteros on April 8, 2019, referred only to Dr. Purcell. Hornyak RT 24.

24   When asked why he did not see Conaway on April 9, 2019, Purcell testified: "I don't recollect

25   exactly." Purcell RT 6.  However, Purcell could easily have delegated this task to an on-call

26

27   _____

28   [1] All of Plaintiff's exhibits and deposition excerpts referenced are attached to the JDP Decl.

psychiatrist on April 9, 2019, so that Conaway could have received medication pursuant to policy. CFMG 30(b)(6) RT 50; CMGC Policy D02.1, Continuation of Medications, Exh 911.

Conaway had a long history of drug and alcohol abuse, homelessness and depression and a history of suicidal ideation.  Exh 327-34; Exh 324; Exh 529.  He had been incarcerated in the Solano County jails on at least 15 separate occasions.  Conaway was arrested on March 4, 2019, and brought to the Solano County Justice Center Detention Facility ("JCDF") in the early afternoon. Exh 327-54.  A CFMG nurse undertook the Medical Intake Triage/Receiving Screening at 2:00 p.m. Exh 327-53.  On the first page of the form she wrote: "Non verbal – will not answer any questions." Exh 327-50.

From March 4, 2019, until his death on April 10, 2019, Conaway was not seen by a psychiatrist or any clinician capable of prescribing psychotropic drugs despite the fact that on September 21, 2018, Defendant Purcell had prescribed Celexa (a psychotropic drug) to Conaway to last until December 30, 2018, and had created a task to follow up on December 17, 2018, for a 90-day renewal of Celexa for Conaway, which would have extended the prescription of Celexa to March 17, 2019. Exh 327-37.

After the initial inmate classification interview on March 4, 2019, during which Conaway was mute and refused to participate, Classification Officer Posadas recorded that Conaway "has mental health issues," that Conaway appeared to have special mental health issues that may require special housing and that Conaway posed a high risk/threat to himself. As to the latter question, Officer Posadas wrote "FOR INMATES OWN SAFETY." Exh 321-4, 321-3. However, this Intake Classification questionnaire was not disclosed to CFMG mental health staff. 30(b)(6) RT 72. Conaway was accepted into the jail despite the fact that he was unable to answer the medical questions. Exhs 316; 317.  On March 19, 2019, Officer Bidou wrote that she was "concerned [Conaway's] MH may be deteriorating." Exh 603-3.  This was not shared with CFMG. Ballesteros RT 95-96.

On March 25, 2019, Defendant Bowie asked Conaway in writing "if he became suicidal how would he let the Officer know he was in distress." Exh 327-25.  Conaway "shrugged his shoulders" but Bowie failed to place Conaway on suicide watch.  Conaway should have been placed

on suicide watch at that point.   Declaration of Jeffrey Metzner, M.D. ("Metzner Decl."), ¶ 5, attached to JDP Decl.  Conaway's last video visit with his mother was on March 31, 2019. Exh 314. When Conaway was placed on MHO status; he was then housed by SCSO, pursuant to policy, in an isolation cell, Cell N-8, where he remained until he ended his life there on April 10, 2019.  COS 30(b)(6) RT 58.

Because of the County's policies and customs and Sheriff's Ferrara's actions and omissions to act, Conaway remained locked up in an isolation cell more than 23 hours each day, refusing to eat and refusing visits with his mother, and although they did not see Conaway's condition improving for 9 days, CFMG mental health staff never treated him.  When he finally wrote "Med?" on a piece of paper on April 8, 2019, he still received no treatment, just observation.  None of the defendants reviewed Conaway's extensive Solano County jail medical records, which were accessible to them.

Because the County of Solano ("COS"), the Solano County Sheriff's Office ("SCSO"), Sheriff Thomas A. Ferrara, and their contracted medical care provider, CFMG, maintained and implemented policies and customs that were the moving force behind the deprivation of Conaway's and Plaintiff's constitutional rights, the County's motion for summary judgment, Dkt. 107, should be denied.

## II.    Legal Standard

Summary judgment is proper when "a movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* In deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party – Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation

marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

A party seeking summary judgment always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  The movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Id*. at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102-03.  "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. "Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1270 (9th Cir. 1994).

"The district court need not consider arguments made for the first time in a reply . . . ."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

### III. Summary Judgment as to the Municipal Liability Claim against the County of Solano and Sheriff Thomas A. Ferrara in his official capacity should be denied

#### A. Claim for inadequate medical care – *Monell* liability

The County is financially responsible for the Sheriff's actions in his capacity as administrator of the local jails. *Streit v. Cty. of L.A.*, 236 F.3d 552, 566-67 (9th Cir. 2001).  "The sheriffs have exclusive responsibility for running the county jails. Cal. Gov. Code § 26605. But the counties retain the ultimate authority over the local jails through their fiscal and administrative

oversight. Cal. Gov. Code §§ 23013, 25303." *Id.* at 567.  Sheriff Ferrara was a final policymaker when acting in the role of administrator of the county jail, and the County is liable for his policy decisions. *Cortez v. County of Los Angeles*, 294 F.3d 1186, 1189-90 (2002).

"A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a local governmental entity may be liable for failing to act to preserve constitutional rights under § 1983 where the plaintiff can establish the following elements: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving  force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, v. Harris*, 489 U.S. 378, 389-91 (1989)).

A "policy" is "'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Oviatt*, 954 F.2d at 1477 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). A "policy" can be one of action, *see Monell*, 436 U.S. at 661 (forcing women to take early maternity leave), or inaction, *see City of Canton,* 489 U.S. at 387 (failure to train); *Oviatt*, 954 F.2d at 1477 (failure to implement adequate procedural safeguards).  A municipality "can be liable for an isolated constitutional violation when the person causing the violation has 'final policymaking authority.'" *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 122, 123 (1988).

Whether the County's policy violated Conaway's rights "does not hinge on whether County policymakers knew that the County's polic[y] would pose a substantial risk of serious harm to [Conaway], in particular." *Gibson v. County of Washoe,* 290 F.3d 1175, 1191 (9th Cir. 2002), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Plaintiff must show only that the policy would pose a risk to someone in Conway's situation. *Id.* To

be a "motivating force" behind a plaintiff's injury, the "identified deficiency" in the county's policies or training "must be closely related to the ultimate injury." *Gibson,* 290 F.3d at 1196, (quoting *City of Canton*, 489 U.S. at 391).

From March 4, 2019, to April 5, 2019, Conaway, was a pretrial detainee because he had been detained on a probation violation and his incarceration was not designed to punish. *Ressy v. King Cnty.,* 520 Fed.Appx. 554 (9th Cir. 2013); *Youngberg v. Romeo,* 457 U.S. 307, 321-22 (1982). The Fourteenth Amendment's due process clause guarantees that pretrial detainees receive constitutionally adequate medical and mental health care. *Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010), *cert. granted, judgment vacated sub nom. City of Reno v. Conn*, 563 U.S. 915, 131 S. Ct. 1812, 179 L. Ed. 2d 769 (2010), *opinion reinstated*, 658 F.3d 897 (9th Cir. 2011).  The right to adequate medical care requires treatment of a "serious" medical need, which exists when "failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 1095.  "A heightened suicide risk or attempted suicide is a serious medical need." *Id.*

In *Gordon v. County of Orange,* 888 F.3d 1118 (9th Cir. 2018) the Ninth Circuit held that claims for violations of the right to adequate medical care brought by pretrial detainees under the Fourteenth Amendment "must be evaluated under an objective deliberate indifference standard," citing *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), and that "based thereon, the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment" are:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each case.'"*Id.* at 1071 (quoting *Kingsley*, 135 S.Ct. at 2473; *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). . . .  [A] plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (footnote omitted) (quoting *Castro*, 833 F.3d at 1071).

*Id.* at 1124-25.

Before April 5, 2019, Conaway was a pretrial detainee. As to each of the defendants, Purcell, Nagar, Bowie, Maike, and Ballesteros, a reasonable jury could conclude that they committed acts of omission in failing to treat Conaway by failing to place him on suicide watch where he would receive a mental health assessment, failing to develop an individualized treatment plan despite the fact that CFMG policy required it, failing to review Conaway's prior jail medical records that were accessible in CFMG's database, failing to create a task for Conaway to be assessed by a psychiatrist for medication, and that they failed to take reasonable measures to abate the risk that Conaway would suffer serious harm that they caused, and that they acted with reckless disregard in failing to take reasonable measures to abate the risk.

Individuals in state custody following a criminal conviction have a constitutional right to adequate medical treatment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). For an inmate to bring a valid § 1983 claim against a prison official for a violation of the Eighth Amendment,

> he must first "objectively show that he was deprived of something 'sufficiently serious.'" *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). "A deprivation is sufficiently serious when the prison official's act or omission results 'in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).
>
> Next, the inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Foster*, 554 F.3d at 812. To satisfy this subjective component of deliberate indifference, the inmate must show that prison officials "kn[e]w[] of and disregard[ed]" the substantial risk of harm, but the officials need not have intended any harm to befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 837, 842.

*Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "A heightened suicide risk or attempted suicide is a serious medical need." *Conn,* 591 F.3d at 1095.

"A fact-finder may infer subjective awareness from circumstantial evidence." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) (citations omitted). Summary judgment on deliberate indifference cannot be supported "simply on the basis of the defendants' assertions as to their own state of mind." *Conn*, 591 F.3d at 1097. "Whether [an] official had the requisite knowledge of a

substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id*. (quoting *Farmer*, 511 U.S. at 842). In *Conn* the court determined that a reasonable jury could conclude from the record evidence "that Cluska's medical need was so obvious that [the officers] must have been subjectively aware of it, despite their later denial of that awareness." *Id.* The court noted that "questions involving a person's state of mind are generally factual issues inappropriate for resolution by summary judgment." *Id*. at 1098 (internal quotation marks and citation omitted). With respect to claims arising under *Monell*, a plaintiff must show the municipality's deliberate indifference under an "objective inquiry." *Castro,* 833 F.3d at 1076 (*en banc*). Defendants Purcell, Nagar, Ballesteros, Maike, and Bowie were all aware that sentencings (Exh 940-4), isolation (Exh 940-3), depression (Exh 940-3) and family history (Exh 940-3) were high suicide risk factors.

In this case a reasonable jury could conclude that Conaway's medical need was so obvious that Purcell, Nagar, Ballesteros, Maike, and Bowie must have been subjectively aware of it despite arguments to the contrary.

### 1. SCSO maintained a policy of housing inmates who were on MHO because they were a threat to themselves in lockdown solo cells with known suicide hazards

Sheriff Ferrara was the facility administrator of the Solano County jails under Title 15 Calif. C. Reg. ("CCR") § 1006 and was bound with the exclusive responsibility for operating the jails.

As a result of this policy, Jeremiah Conaway committed suicide by forming a noose with a bedsheet and hanging himself from the upper bunkbed railing. Exh 10-5

During initial inmate classification on March 4, 2019, Conaway was interviewed by Classification Officer Posadas. Exh 603-4. Classification takes place after the medical screening performed by CFMG personnel. SCSO Policy 18.000 § III.D.1, Exh 808-2. Conaway was mute and refused to participate in the interviewed. Exh 321. Pursuant to SCSO Policy 18.000 Conaway was housed in Administrative Separation, a form of administrative segregation. Exh 808-2. Pursuant to SCSO Policy 18.06 Conaway would not be moved out of Administrative Separation until "the reason which required Administrative Segregation is no longer present or information and/or evidence developed indicating conditions have changed and the inmate no longer presents a threat."

Exh 810; *see also* Exh 805. Conaway was housed in Cell N-8, which was a solo jail cell. COS 30(b)(6) RT 58; Redacted Coroner's Report, Exh 10-5; Exhs 802, 851-854 (diagram and photographs of Cell N-8 and Entrance to N-Module). Inmates placed on MHO in Solano County jails were housed in solo cells. Kottraba RT 53. Conaway was locked down in Cell N-8 for an average of . Cell N-8 contained a steel two bunk bed, approximately 5-1/2 feet tall. Exh 855.

On March 15, 2019, Conaway appeared in Solano County Superior Court before the Honorable Tim P. Kam, Judge, in Case Nos. VCR 229964 and VCR232744. Reporter's Transcript of Proceedings, March 15, 2019, Case No. VCR232744 ("VCR232744 RT 3-15-19"). Judge Kam found Mr. Conaway in violation of probation for failing to maintain contact with probation and set sentencing for April 5, 2019. VCR232744 RT 3-15-19 p. 3. On April 5, 2019, Conaway was transported from JCDF to court and Judge Kam reinstated Conaway's probation in both cases and ordered him released subject to any other holds. Reporter's Transcript of Proceedings, April 5, 2019, Case No. VCR232744 ("VCR232744 RT 4-5-19 I") p. 3. After a recess the case was recalled. VCR232744 RT 4-5-19 II 2 p. 2. Conaway's attorney informed the court that Conaway was "choosing not to be on probation anymore." *Id.* Judge Kam offered to put the case over to Monday. Conaway's attorney informed the court that Conaway wanted to proceed that day. *Id.* Conaway was sentenced to serve a total term of 2 years on both cases, including 8 months consecutive on the new case. *Id.* at 3. Since 2015 Conaway had never been incarcerated for more than 46 days . Exh 801. None of the individual CFMG defendants inquired about Conaway's court sentencing on April 5, 2019, nor did any of the defendants discuss with Conaway his sentencing. Purcell RT 74; Ballesteros RT 79, 93; Bowie RT 94; Maike RT 114.

Conaway was returned to Cell N-8 in JCDF on April 5, 2019, and remained on MHO status. Exh 327-26. He had been placed on MHO on April 1, 2019, and was never removed from MHO. Exh 327-22. The Solano County Sheriff's Office ("SCSO") maintained a written policy manual entitled Custody Division Policy & Procedures ("SCSO Policy"). MHO was defined in SCSO Policy 9.012 and Policy 13.003. Exh 325, Exh 804. Policy 9.012 applied to CFMG personnel. Maike RT 60.

On April 1, 2019, Conaway was transferred from SCF to cell 8 in JCDF Module N because he was placed on MHO status. COS 30(b)(6) 58.  Cell N-8 was an isolation cell with hanging points and full property, including bedsheets.  Photographs of Cell N-8, including photograph showing Jeremiah Conaway lying supine on the floor of the cell on April 10, 2019, Exhs 851-853, and Photograph of two bunk bed that was in Cell N-8, from which Conaway hung himself with a bedsheet, Exh 855.  SCSO Policy 18.000, in effect in April 2019[2], provided that inmates who continue to refuse to be interviewed by the classification officer "will be assigned to Administrative Separation (ADSEP) pending further classification review." Exh 808.

Pursuant to SCSO Policy 9.012, Exh 325, Conaway was placed on MHO on April 1, 2019. Exh 327-13.  SCSO Policy 9.012 states that the purpose of the policy is "to provide guidance to custody staff regarding special management of inmates considered to be a threat to their own safety . . . ." MHO is defined as "Increased supervision of an inmate, as a precaution against self-injury or to monitor unusual or bizarre behavior."; *see also* Exh 804 (SCSO Policy 13.003 defines MHO as being for "[i]nmates who require observation or a protected environment due [to] their mental illness.").  Though Conaway may have been placed on MHO to monitor bizarre behavior, he was later maintained on MHO because he was "not able to contract for safety." Ballesteros RT 43, 44. Thus, Conaway was a threat to himself and was maintained on MHO for that reason.  Dr. Carin Kottraba testified that Solano County used MHO as a "type of suicide watch." Kottraba RT 53:24-25.

Though Conaway was a threat to himself and on MHO, SCSO policy required that Conaway be housed in the cell he was housed in in N-Module. COS 30(b)(6) RT 58; Nagar RT 49-50. SCSO could have removed the bunk bed and the bedsheets from the cell but they failed to do so. Or, since Conaway was housed in a solo cell, SCSO could have replaced the double-decker bunk bed in Cell N-8 with a standard bed that was not 5-1/2 feet in height.  Thus, the SCSO policy was the moving force behind the suicide of Conaway because Conaway, who was a known threat to himself was housed in a single lockdown cell with hanging points and full property and summary judgment

---

[2] All SCSO policies cited in this opposition were in effect in March and April 2019.

should be denied.

### 2.    Failure to train CFMG mental health staff on MHO and SCSO Policy 9.012 – Special Management Inmate Observation

SCSO Policy 9.012 dealt with MHO. CFMG had no MHO policy. Kottraba RT 39.  The SCSO conducted no training of CFMG employees except for training on PREA and on radio procedures. COS 30(b)(6) RT pp. 20-21.

Dr. Carin Kottraba, who was the Vice President for Mental Health for CMGC and Wellpath, LLC, testified that MHO meant different things to different people. Kottraba RT 39.  The CFMG defendants failed to follow the SCSO MHO policy, which required that "mental health staff . . . review the need for continued observation every eight (8) hours." Exh 325.  Jeremiah Conaway had been under the care of a psychiatrist (Purcell), had a history of depression, a history of suicidal ideation, documented in the CFMG electronic medical records (Exh 529), a history of chronic homelessness, a history of suicide in the family.  The failure to train was the moving force because Conaway was housed by the SCSO in a lockdown isolation cell with a 5½ foot high bunk bed, in which he was locked down every day from April 1 through April 9, 2019, for 24 hours, with the exception of April 5, 2019, when he went to court, April 1, 2019, and April 4, 2019, when he was locked down for 23 hours and 40 minutes and 23 hours and 49 minutes, with known hanging points and full property, including bedsheets. If the CFMG defendants had received training on MHO they would have directed the SCSO to move Conaway to a different cell without hanging points and full property or they would have directed the SCSO to remove the bunk bed and replace it with a standard bed.

### 3.    CFMG policies and customs

### (a)    CFMG had no MHO policy

In 2019, up to and including April 10, 2019, CFMG had no MHO policy. Kottraba RT 39; Metzner Decl. ¶ 8.  CFMG had 79 distinct policies. Exh 900.  No policy addresses Mental Health Observation ("MHO").  MHO is not defined in the CFMG (CMGC) policies. Kottraba RT 39. Thus, CFMG had no policy pertaining to the conditions under which inmates placed on MHO should be housed.

The Ninth Circuit has found that "a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even where the county has other general policies in place." *Long v. County of Los Angeles,* 442 F.3d 1178, 1189 (9th Cir. 2006). In *Gibson v. County of Washoe* the Ninth Circuit held that "[w]hen policymakers know that their medical staff members will encounter those with urgent mental health needs yet fail to provide for the identification of those needs, it is obvious that a constitutional violation could well result." *Id.* at 1196. In other words, only where the omission "reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.  This high standard is met when the need for better policies or training "is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

It was so obvious that CFMG should have had a policy pertaining to MHO status and, specifically, the conditions under which inmates placed on MHO should be housed, and the lack of such a policy was so likely to result in the violation of constitutional rights, that CFMG can reasonably be said to have been deliberately indifferent to the need for an MHO policy.

In *Gibson*, the Ninth Circuit held:

In order to be a "moving force" behind Gibson's injury, we must find that the "identified deficiency" in the County's policies is "closely related to the ultimate injury." *Canton*, 489 U.S. at 391; *see also  Oviatt*, 954 F.2d at 1478. The plaintiff's burden is to establish "that the injury would have been avoided" had the County had a policy directing its medical staff to use information obtained from prisoner's medication to determine whether he should be jailed or hospitalized and, if the former, under what conditions.  *Oviatt*, 954 F.2d at 1478.

*Gibson,* 290 F.3d at 1196.

Had CFMG had a policy on MHO and, specifically, the housing of inmates on MHO, the CFMG defendants would likely have notified the SCSO that Conaway needed to be moved to a cell without known suicide hazards, thereby preventing Conaway's suicide.

**(b)    CFMG had no policy requiring a consultation with a psychiatrist for inmates who were on MHO because they were a threat to their own safety**

In 2019 CFMG had no policy requiring that an inmate who had been placed or maintained

on MHO status for his own safety receive a consultation with a psychiatrist – even through

telepsychiatry.  Metzner Decl. ¶ 11.  As a result, Conaway was never seen by a psychiatrist during

his incarceration in Solano County jails from March 4, 2019, through April 10, 2019.  This

deficiency in CFMG's policies resulted in Conaway, who had a history of depression and suicidal

ideation, being placed in an Administrative Separation isolation cell, where he was locked down an

average of more than 23 hours each day from April 1, 2019, through April 10, 2019, instead of

being treated by a psychiatrist and receiving medication. This deficiency in CFMG policy was the

moving force behind Conaway's suicide because, as was recorded by Defendant Ballesteros in a

chart note in CorEMR on September 17, 2018, Conaway informed her that he took Celexa, that he

had a history of depression and anxiety, and that he believed medications were "very effective for

him." Exh 327-38.

> **(c)** **CFMG had no policy requiring mental health staff to review an inmate's prior electronic Solano County jail medical records in order to complete a mental health assessment plan for inmates on MHO**

There was no CFMG policy requiring that mental health clinicians review prior jail medical

records of inmates in order to complete a mental health assessment.  CFMG had no MHO policy.

CFMG had no policy requiring that an inmate placed on MHO receive a mental health assessment.

Conaway had a mental health assessment in October 2018. Exh 545.  CFMG Policy E05 stated that

all patients receive mental health screening at the time of intake. Exh 920-1.  Policy E05 states that

"refusing to answer all the mental health questions on the Receiving Screening results in a referral

to mental health and informing custody when appropriate." Exh 920-2. CFMG Policy E04 stated

that "[a] comprehensive health assessment/inventory shall be completed on all patients on or before

14 days of arrival at the facility." Exh 921-1.  Because of Conaway's being mute CFMG was unable

to complete the mental health assessment, which was supposed to be completed by March 18, 2019,

but was not commenced until March 24, 2019.  Refusal of Medical Care, March 29, 2019, Exh 327-

83; Refusal of Medical Care, March 24, 2019, Exh 327-59.

Had the CFMG defendants reviewed their own database, they would have found that

Conaway had a history of depression, drug abuse and withdrawal, homeless, being on suicide watch

(Exh 502) and suicidal ideation (Exh 529) and that he was previously seen by Dr. Purcell, who, on

September 21, 2018, prescribed Conaway a 90-day supply of Celexa, an anti-depressant, and that Conaway had said that this medication had been good for him. Instead of reviewing the prior medical records in order to complete a mental health assessment of Conaway, CFMG defendants placed Conaway in an isolation cell on MHO and observed him but did not treat him, and increased his suicide risk, because of the deficiency in CFMG policy, which was the moving force behind the violation of Conaway's constitutional rights and deliberate indifference to his serious medical needs, which resulted in his death.

### (d) CFMG had no policy requiring that Priority 1 tasks in CorEMR be performed at the next sick call and a custom of treating Priority 1 tasks as routine

In March and April 2019 CFMG used the CorEMR electronic medical records system. Maike RT 35. CFMG had no policy requiring that tasks labeled Priority 1 in the CorEMR system be performed at the next sick call. CFMG 30(b)(6) RT 59. Additionally, CFMG had a custom of treating Priority 1 tasks as routine. CFMG 30(b)(6) RT 59-60 ("Q. But there's no way that a routine task can be given a one, right? A. It could be also."); *cf.* Hornyak RT 40 (Priority 1 meant "[t]he next available sick call.").

This policy and custom was the moving force behind the deprivation of Jeremiah Conaway's right to adequate medical care and his resulting death by suicide. Dr. Purcell arrived at work at JCDF on the morning of April 9, 2019. Purcell RT 7. Dr. Purcell saw the Priority 1 task entered by Nurse Ballesteros on his CorEMR task list. However, he failed to review Conaway's medical chart. Purcell RT 6-7.

### 4. Delegation and ratification

Sheriff Ferrara delegated all control and final policymaking authority over the medical care of Solano County jail inmates to defendant CFMG. Defendant Thomas Ferrara's Second Supplemental Response to Plaintiff's Interrogatories, Set No. One, Exh 5 to JDP Decl.; Exh 803.[3] "[A] State cannot avoid its obligations under federal law by contracting with a third party to

---

[3] Sheriff Ferrara appears to have run afoul of 15 CCR § 1030, which requires a written suicide prevention program "developed by the facility administrator, in conjunction with the health authority . . . ."

perform its functions.  The rights of individuals are not so ethereal nor so easily avoided." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1074 (9th Cir. 2010). A plaintiff may show that, rather than being the product of general official policy, on a given occasion the conduct was the result of "a deliberate choice . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-84 (1986).  Thus, CFMG policies become the County's policies.  The acts of CFMG personnel, to whom final policymaking authority was delegated, became the policy of the County. *Hyland v Wonder*, 117 F.3d 405, 415 (9th Cir. 1997).  As shown above, CFMG maintained policies, customs, and policies of inaction that were the moving force behind the deprivation of Conaway's and Plaintiff's constitutional rights and deliberate indifference to Conaway's serious medical needs. CFMG, Nagar, who was the Health Authority under 15 CCR § 1006, and Purcell, who oversaw the mental health staff, Exhs 705A; 20, delegated all psychiatric care to Purcell. Additionally, Ferrara ratified the conduct in this case. Exh 880.  Thus summary judgment for the County should be denied.

### 5.     *Canton* liability

On December 2, 2014, Douglas Tuttle, 56 years old, committed suicide in his solo cell by hanging himself with a bedsheet from the top bunk frame.  Coroner's Report, Case # 14-1220, Exh 820.  "The sheet was tucked into the side of the upper bunk and was wrapped around the decedent's neck." Exh 820-1.  Tuttle was on ADSEP and MHO. COS 30(b)(6) RT 74-75.  In response to this suicide the Solano County Sheriff's Office took no corrective action. COS 30(b)(6) RT 75.  Before Conaway there were five completed suicides in five years. Exh 821.

Despite the suicide by Douglas Tuttle in 2014, the SCSO still housed Conaway in a solo lockdown cell with a double-decker bunk bed and a bedsheet, which he formed into a noose and suspended from the top bunk frame to commit suicide. Thus, the County had an established practice of housing inmates on MHO because they were a threat to their own safety in solo cells with two bunk beds and bedsheets that they could use to commit suicide.

Under *Monell* the County can be liable under 42 U.S.C. § 1983 if its "policy or custom" caused Conaway's injuries through deliberate indifference to his constitutional right to adequate

medical care. *Castro,* 833 F.3d at 1073. Plaintiff can establish deliberate indifference by showing that the County had actual or constructive knowledge that its practices were substantially certain to cause a constitutional violation. *Sandoval v. Cty. of San Diego*, 985 F.3d 657, 682 (9th Cir. 2021). The County of Solano had actual knowledge that the housing of an inmate who was at risk of suicide in a solo lockdown cell with suicide hazards was substantially certain to cause a constitutional violation. It chose not to take any corrective action in response and is therefore not entitled to summary judgment.  COS 30(b)(6) RT 75.

The County argues that this case is "very similar" to *Rice ex rel. Rice v. Correctional Medical Services,* 675 F.3d 650 (7th Cir. 2012).  COS MSJ 11.  *Rice* is not controlling and is factually distinguishable.  Rice did not commit suicide.  Several of the *Rice* Court's conclusions finding no deliberate indifference hinged on the fact that Rice died of a rare psychiatric disorder - excessive water drinking - which was not known or foreseeable to the *Rice* defendants.  Here, the evidence shows that the County, on its own, through its policymakers and through CFMG, knew that Conaway was a suicide risk, and Conaway did eventually commit suicide by hanging himself in a cell that had known suicide hazards.  Additionally, Rice had numerous consultations with a psychiatrist who prescribed medication to Rice and referred Rice to an outside hospital for more intensive treatment.  But Conaway was *never seen* by the psychiatrist, Purcell, and Conaway was never prescribed any medication.  In late 2018 Conaway was a patient of Purcell, who had prescribed Celexa, a psychotropic medication, to Conaway, which CFMG never renewed or reinstated when Conaway returned to Solano County jail four months later. And unlike in *Rice,* which lacked an identification of the deficiency in the jail policies that was the moving force in Rice's death, Plaintiff has shown that SCSO's policies were deficient and the moving force behind the deprivation of Conaway's constitutional rights.

**B.    Claim 2 -- deprivation of familial relationship under the substantive due process component of the 14th Amendment – *Monell* liability**

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent

through official conduct." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

To violate substantive due process, "the harmful conduct must 'shock [] the conscience' or 'offend the community's sense of fair play and decency.'" *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)); *Lemire*, 726 F.3d at 1075 (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The Ninth Circuit has held that the "shocks the conscience" standard is satisfied by showing that a state official (1) "acted with *deliberate indifference*" or (2) "acted with a *purpose to harm* . . . for reasons unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1137.

"A prison official's deliberately indifferent conduct will generally 'shock the conscience' the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire*, 726 F.3d at 1075; *see also Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) (stating that whether "actual deliberation is practical" is the critical consideration); *Prasad ex rel. Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1116 (E.D. Cal. 2013) ("[A] prison official's deliberate indifference to a prisoner's serious medical needs shocks the conscience and states a claim under the substantive due process clause."). In this case it is undisputed that the defendants had time to deliberate before acting or failing to act. Because Plaintiff has raised disputed issues of material fact as to Claim 1 and shown that the defendants acted with deliberate indifference to Conaway's serious medical needs, disputed issues of material fact exist precluding summary judgment for the County of Solano on Claim 2. Summary judgment on Claim 3 against the County of Solano should thus be denied.

## IV.   Summary Judgment should be denied to Sheriff Ferrara in his individual capacity

### A.   Claim for inadequate medical care – supervisory liability

Sheriff Ferrara is liable in his individual capacity, if he set in motion acts which caused others to inflict constitutional injury. *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Such conduct may include culpable action or inaction in the training of subordinates, acquiescence in a constitutional deprivation, or conduct showing indifference to the rights of others.

*Id.* at 646. Sheriff Ferrara was the facility administrator of the Solano County jails under Title 15 CCR § 1006. Sheriff Ferrara took the oath of office as the Sheriff-Coroner for Solano County on November 1, 2012.

"A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Id.* (internal quotation marks and citations omitted).

### 1.   SCSO policy of housing inmates placed or retained on MHO because they were a threat to themselves in lockdown solo cells with known suicide hazards

As stated above the County maintained a policy of retaining inmates on MHO status in solo lockdown cells with bunk beds and bedsheets. In 2014 Douglas Tuttle committed suicide by hanging himself from a noose fashioned from a bedsheet attached to the upper frame of the bunk bed. Exh 820.  Sheriff Ferrara was the facility administrator of the Solano County jails and had exclusive responsibility for operating the jails.  Sheriff Ferrara was thus personally responsible for the operation of the Solano County jails.  That County policy was the moving force behind the suicide of Jeremiah Conaway.  Pursuant to SCSO policy Conaway was housed in Administrative Separation, a form of administrative segregation.

By the time Conaway was placed on MHO it was known that he was a threat to himself. Conaway had been placed on suicide watch in January 2017, Exh 502, and had expressed suicidal ideation as of March 2017. Solano County Jail Medical Summary dated February 9, 2018, Exh 529; Exh 326.  Defendant Maike testified that he was truthful in his interview with Investigator Thelen. Maike RT 40. In his recorded interview with Investigator Thelen Mr. Maike stated that "anyone that has a history of being on suicide watch, any history of suicide ideation, history of drug withdrawal, homelessness . . . all of those people are at risk [of suicide] and could be placed on suicide watch." Exh 514-2.  Placing an inmate who is a threat to himself in a cell with hanging points and full

property is a violation of the 14th Amendment right to safety.  Conaway used the bedsheet in Cell N-8 to hang himself from the railing of the bunkbed.

Sheriff Ferrara was the final policymaker responsible for establishing final policy with respect to property to be available to Solano County jail inmates on MHO status. COS 30(b)(6) 14. This policy was so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the violation.  Thus, summary judgment for Sheriff Ferrara in his individual capacity should be denied.

### 2. Failure to train CFMG mental health staff on MHO and SCSO Policy

SCSO Policy 9.012 was the SCSO policy dealing with MHO. CFMG had no MHO policy. The SCSO conducted no training of CFMG employees except for training on PREA and on radio procedures. COS 30(b)(6) RT pp. 20-21. Sheriff Ferrara was the facility administrator of the Solano County jails under 15 CCR § 1006 and had exclusive responsibility for operating the jails. This policy was so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the violation.

### 3. Delegation

Sheriff Ferrara delegated all control and final policymaking authority over the medical care of Solano County jail inmates to defendant CFMG. Exh 5 to JDP Decl. Because he delegated all control over the medical care of Solano County jail inmates to CFMG, Sheriff Ferrara is liable to the extent that the CFMG policies and the acts of CFMG personnel to whom he delegated final policymaking authority were unconstitutional.

### (a) CFMG policies and customs

As shown above in Section III.A.3, CFMG maintained policies, customs and a lack of policies that were the moving force behind the violation of constitutional rights in this case. Additionally, in 2019 CFMG had no Mental Health Supervisor overseeing the clinical care in the Solano County jails. CFMG 30(b)(6) RT 14-15. The deficient CFMG policies, customs and omissions were so deficient that these policies, customs and omissions itself were a repudiation of constitutional rights and is the moving force of the violation.  Thus, summary judgment for Sheriff Ferrara in his individual capacity should be denied as to Claim 1.

**B.    Claim 2 — deprivation of familial relationship**

The same County and CFMG policies, customs and policy deficiencies that were the moving force behind the deprivation of Conaway's constitutional rights, as shown above, resulted in a deprivation of Conaway's and LeMoon's rights under the substantive component of the due process clause of the Fourteenth Amendment. As those policies were so deficient as to be a repudiation of constitutional rights and the moving force of the violation, summary judgment for Sheriff Ferrara in his individual capacity should be denied as to Claim 2.

**V.    Sheriff Ferrara is not entitled to qualified immunity**

It has been clearly established since 1989 that "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights and is the moving force of a constitutional violation.'" *Hansen v. Black*, 885 F.3d 642, 646 (9th Cir. 1989). As explained above the policies that Ferrara implemented are so deficient that they were the moving force behind the constitutional violation. Ferrara is thus not entitled to qualified immunity. *See Taylor v. Riojas,* --- U.S. ---, 141 S.Ct. 52 (2020) (per curiam) ("'[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'") (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002)).

**<u>Conclusion</u>**

Thus, except as to Claim 5 (Civil Code § 52.1, against Sheriff Ferrara), Claim 6 (Negligent Supervision, Training, Hiring, and Retention, against Sheriff Ferrara), and Claim 8 (ADA, against the County of Solano), Plaintiff respectfully requests that the Court deny Defendants' motion

DATED: September __16__, 2021                Jeff Dominic Price, JDP PC

                                        By _____

                                             Jeff Dominic Price, Esq.
                                             Attorney for the Plaintiff