UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA LEMOON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA FORENSIC MEDICAL GROUP, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-02552-PJH<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 107, 107-9, 108, 109, 115, 117, 118, 123 |

Defendants', the County of Solano and Sheriff Thomas S. Ferrara (collectively, "County defendants"), motion for summary judgment came on for hearing before this court on October 7, 2021. The California Forensic Medical Group ("CFMG") defendants', CFMG, Wellpath, LLC ("Wellpath")[1], John Maike, Michelle Bowie, Marni Ballesteros, Dr. Donald Purcell, and Dr. Dinesh Nagar, separate motion for summary judgment came on for hearing before this court on October 7, 2021.[2] Plaintiff appeared through her counsel, Jeff Price. The County defendants appeared through their counsel, Temitayo Peters and Gregory Thomas. The CFMG defendants appeared through their counsel, Jerome Varanini. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS IN PART the County defendants' motion for summary judgment and DENIES the CFMG defendants' motion for summary judgment except as indicated below for the following reasons.

---

[1] Wellpath is the successor organization of CFMG.
[2] Dr. Raymond Herr is also a named defendant, but he is not represented in this motion and did not file a separate motion for summary judgment.

# BACKGROUND

## A. Factual History

This case concerns decedent Jeremey Conaway's detention and incarceration in the Solano County's Justice Center Detention Facility ("JCDF") from March 4, 2019 when he was arrested to April 10, 2019 when he committed suicide in his cell.

Conaway's medical records show a long history of drug and alcohol abuse, homelessness, and depression. Price Decl. (Dkt. 114-1) at 86–127, 174, 185–87.[3] Before his death, Conaway had been incarcerated on fourteen separate occasions, and JCDF medical records show that Conaway had previously been prescribed antidepressants by CFMG defendant Dr. Purcell as recently as September 2018. Id. at 122, 185–87. Other JCDF medical records show that Conaway had previously admitted to being suicidal and depressed. Id. at 84, 176–77.

On March 4, 2019, Conaway was arrested and booked at JCDF. During his intake, a nurse noted that Conaway was "non-verbal" and would not "answer any questions." Id. at 135–38. According to his medical log, Conaway was placed in administrative separation because he refused to speak to anyone. Id. at 181. Administrative separation occurs when an inmate refuses to partake in the intake process, and "[a]fter the inmate has been given the opportunity to reconsider his/her decision and still refuses to participate in the interview, the inmate [is] assigned to" administrative separation until his housing assignment can be determined. Id. at 203–04.

On March 19, 2019, a CFMG staff member wrote in Conaway's medical records that he repeatedly refused to get out of bed and that she was concerned Conaway "may be deteriorating." Id. at 180. She referred Conaway to "mental health" for an evaluation. Id. On March 25, 2019, March 27, 2019, and March 28, 2019, Conaway received welfare checks (visits from CFMG staff). Id. at 118–19. On March 25, 2019, CFMG defendant Michelle Bowie noted that Conaway was depressed and refused mental health medicine.

---

[3] For ease of reference, the court refers to the ECF PDF pagination unless specified otherwise.

2

Id. at 119–20.  Bowie asked Conaway how he would let staff know if he was feeling suicidal, and Conaway shrugged.  Id. at 120.  On April 1, 2019, CFMG staff member Lisa Harwood inspected Conaway's cell and found that he had two red marks on his arm.  Id. at 117.  When Harwood discussed the need for mental health observation ("MHO") with Conaway, Conaway indicated that the marks on his arm were painted on, and he tried to rub them off with a towel to no effect.  Id. at 117–18.  Harwood then referred Conaway for MHO.  Id. at 118.

On April 1, 2019, Conaway was placed under MHO for his refusal to speak.  Id. at 117–18.  According to the Solano County Sheriff's Office ("SCSO") policy 9.012, MHO is a type of special management of inmate observation.  Id. at 80.  The purpose of policy 9.012 "is to provide guidance to custody staff regarding special management of inmates considered to be a threat to their own safety or the safety of others."  Id.  There are three kinds of inmate observations, one of which is MHO.  First, "sobering observation" is supervision of an inmate who poses a threat to his or her own safety or the safety of others due to intoxication.  Id.  Second, "safety/suicide observation" is increased supervision of "an inmate who displays behavior resulting in the destruction of property or reveals an intent or suspicion to cause physical harm to self or others."  Id.  Safety/suicide observations take "place in a safety cell whenever possible."  Id.  And MHO is "supervision of an inmate, as a precaution against self-injury or to monitor unusual or bizarre behavior."  Id. at 81.  An "inmate on MHO status must be moved to a cell located in the infirmary area to maximize the ability of medical personnel and staff to observe and monitor them."  Id.

Conaway was seen by CFMG staff over fifteen times while under MHO status.  Id. at 107–18.  He was moved to a cell with a bunk bed near the infirmary where he was housed on his own.  Dkt. 114-1 at 21; Ballesteros Dep. 44:18-25 (Dkt. 114-2 at 7); Castillo 30(b)(6) Dep. 87:13-88:7 (Dkt. 114-2 at 69).  On April 3, 2019, CFMG defendant Dr. Nagar wrote in Conaway's medical records that she would notify the mental health department about Conaway's unwillingness to speak.  Dkt. 114-1 at 97.  On April 6, 2019,

3

1  CFMG defendant Bowie asked Conaway if he wanted anxiety medicine or
2  antidepressants, and he nodded, "no." Id. at 110.  Conaway was also asked if he was
3  having thoughts of harming himself, and Conaway shook his head, "no." Id. at 110–11.
4  On April 8, 2019, CFMG defendant Ballesteros visited Conaway in his cell. Id. at 108–09.
5  During the visit, Conaway wrote, "MEDS?" on a piece of paper. Id. at 108.  Ballesteros
6  created a "priority 1" task—an urgent task—to have Conaway assessed for medication
7  management. Id.  The task stated the following: "p[lease] assess for meds.  I[nmate]
8  remains on MHO and was selectively mute, however during this writer's assessment, he
9  wrote down 'Meds?'" Id.  On April 9, 2019, CFMG defendant Dr. Purcell did not respond
10 to the "priority 1" task, although he said the task was on his list.  Purcell Dep. 37:18-21
11 (Dkt. 114-2 at 143).  On April 10, 2019, Conaway hung himself with bedsheets from the
12 top bunk of his cell.  Dkt. 114-1 at 178.

### B. Procedural History

14 Plaintiff filed her original complaint on April 13, 2020, and she filed her first
15 amended complaint on August 6, 2020.  Dkt. 1, 26.  Plaintiff voluntarily dismissed one of
16 the County defendants and two CFMG defendants.  Dkt. 33, 56, 75.  Plaintiff filed her
17 operative complaint, the second amended complaint ("SAC"), on July 7, 2021.  Dkt. 87.
18 After plaintiff filed her SAC, she voluntarily dismissed two additional CFMG defendants.
19 Dkt. 99, 105.  Plaintiff also voluntarily dismissed various claims against the County
20 defendants and some CFMG defendants.  Dkt. 106.  And plaintiff voluntarily dismissed
21 claims against both sets of defendants in her briefings.  See October 7, 2021 Tr. of
22 Proceedings (Dkt. 127).  As a result, plaintiff has considerably reduced her claims in this
23 suit and the number of parties in this action.

24 Regarding the County defendants, there remains three claims against Sheriff
25 Ferrara and a single claim against the County.  Id. at 5.  Claim 1 is a § 1983 action
26 asserted against Sheriff Ferrara for cruel and unusual punishment and deliberate
27 indifference to serious medical needs in violation of the Eighth and Fourteenth
28 Amendments.  Id. at 3.  Claim 2 is a § 1983 action asserted against Sheriff Ferrara for the

4

1    deprivation of substantive due process rights in violation of the Fourteenth Amendment.
2    Id. And claim 3 is a § 1983 action asserted against Sheriff Ferrara and the County for
3    municipal and supervisory liability. Id.

4    Plaintiff asserts nine claims against one or more of the remaining eight CFMG
5    defendants. Id. at 17. Claim 1 is a § 1983 action asserted against all represented
6    CFMG defendants for cruel and unusual punishment and deliberate indifference to
7    serious medical needs in violation of the Eighth and Fourteenth Amendments. Id. Claim
8    2 is a § 1983 action against all represented CFMG defendants for the deprivation of
9    plaintiff's right to substantive due process in violation of the Fourteenth Amendment. Id.
10   Claim 3 is a § 1983 action against CFMG, Wellpath, Dr. Nagar, Dr. Purcell, and Dr. Herr
11   for municipal and supervisory liability. Id. at 18. Claim 4 is a California Government
12   Code § 845.6 action against CFMG, Wellpath, Dr. Nagar, Dr. Purcell, and Bowie for
13   failure to furnish medical care. Id. at 19. Claim 5 is a Bane Act (Cal. Civ. Code § 52.1)
14   action against all represented CFMG defendants. Id. at 20. Claim 6 is a state action
15   against CFMG, Wellpath, and Dr. Herr for negligent supervision, training, hiring, and
16   retention. Id. at 20. Claim 7 is a state negligence action against all represented CFMG
17   defendants and Dr. Herr. Id. Claim 8 is an American with Disabilities Act and
18   Rehabilitation Act action against CFMG and Wellpath. Id. And claim 9 is a California
19   wrongful death action against all represented CFMG defendants and Dr. Herr. Id.
20   These claims are discussed in full below.

21                                    **DISCUSSION**
22   **A.  Legal Standard**
23   A party may move for summary judgment on a "claim or defense" or "part of . . . a
24   claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "there
25   is no genuine dispute as to any material fact and the movant is entitled to judgment as a
26   matter of law." Id.
27   A party seeking summary judgment bears the initial burden of informing the court
28

5

of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may carry its initial burden of production by submitting admissible "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000); see Celotex, 477 U.S. at 324–25 (moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case).

When the moving party has carried its burden, the nonmoving party must respond with specific facts, supported by admissible evidence, showing a genuine issue for trial. Fed. R. Civ. P. 56(c), (e). But allegedly disputed facts must be material—the existence of only "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247–48.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255; See Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

**B.   Analysis**

    **1.   The County Defendants' Motion for Summary Judgment**

The County defendants move for summary judgment on claims 1, 2, and 3 of plaintiff's SAC. Dkt. 107. The County defendants also argue that Sheriff Ferrara is entitled to qualified immunity. Id. at 17.

6

### a. Deliberate Indifference

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067–68 (9th Cir. 2016). "Under both clauses, the plaintiff must show that the prison officials acted with 'deliberate indifference.'" Id. at 1068.

For the Fourteenth Amendment, a pretrial detainee must show: "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries." Sandoval v. Cty. of San Diego, 985 F.3d 657, 669 (9th Cir. 2021) (citing Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018)) (internal quotation marks omitted). To satisfy the third element, a plaintiff "must show that the defendant's actions were objectively unreasonable, which requires a showing of more than negligence but less than subjective intent—something akin to reckless disregard." Id. (internal quotation marks omitted).

To prove deliberate indifference under the Eighth Amendment, on the other hand, a plaintiff must show that an officer knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Castro, 833 F.3d at 1068 (internal quotation marks omitted). For example, an individual defendant violates the "Eighth Amendment if [he is] deliberately indifferent to a prisoner's serious medical needs." Peralta v. Dillard, 744 F.3d 1076, 1081–82 (9th Cir. 2014) (internal quotation marks and alterations omitted). A "medical need is serious if [the] failure to treat it will result in significant injury or the unnecessary and wanton

7

infliction of pain." Id. (internal quotation marks and alterations omitted).

The County defendants argue Sheriff Ferrara is entitled to summary judgment on claim 1 for cruel and unusual punishment and deliberate indifference to serious medical needs. Both the Fourteenth and Eighth Amendment standards apply here. Conaway was a detainee at JCDF from March 4, 2019 to April 4, 2019 and was thus protected under the Fourteenth Amendment during this period. He continued to be incarcerated at JCDF from April 5, 2019 to April 10, 2019, following his sentencing on April 5, 2019, and was thus protected under the Eighth Amendment. RJN, Ex. G at 5:21–6:19 (Dkt. 107-9). Still, plaintiff has not proven that Sheriff Ferrara acted with deliberate indifference under either standard.

It is undisputed that Sheriff Ferrara did not interact or engage with Conaway before Conaway committed suicide. Indeed, Sheriff Ferrara was not aware of Conaway's presence in the jail until he was notified of Conaway's death. As such, plaintiff cannot prove that Sheriff Ferrara knew of and disregarded Conaway's health risks. For the same reason, plaintiff cannot show that Sheriff Ferrara made an intentional decision that increased the substantial risk of harm to Conaway. Accordingly, Sheriff Ferrara, in his individual capacity is entitled to summary judgment on this claim.

Plaintiff also brings this claim against Sheriff Ferrara in his supervisory (or official) capacity with respect to plaintiff's claims based on unconstitutional County and CFMG policies and policy omissions. The court addresses this claim with plaintiff's claim 3 for municipal and supervisory liability, as the claims are duplicative.

**b.   Substantive Due Process**

The Due Process Clause of the Fourteenth Amendment protects parents' "liberty interest in the companionship and society of their children." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). "The substantive due process right to family integrity or to familial association is well established." Rosenbaum v. Washoe Cty., 663 F.3d 1071, 1079 (9th Cir. 2011). A parent "has a fundamental liberty interest in companionship with his or her child." Id. (internal quotation marks omitted). And a "state may not interfere

8

with this liberty interest, and indeed the violation of the right to family integrity is subject to remedy under § 1983." Id.

To prevail on a substantive due process claim under the Fourteenth Amendment, a plaintiff "must show that an officer's conduct 'shocks the conscience.'" Nicholson v. City of Los Angeles, 935 F.3d 685, 692 (9th Cir. 2019). The "critical consideration is whether the circumstances are such that actual deliberation is practical." Id. (internal quotation marks and alterations omitted). If there is deliberation, "an officer's 'deliberate indifference' may suffice to shock the conscience and the plaintiff may prevail by showing that the officer disregarded a known or obvious consequence of his action." Id. at 692–93 (internal quotation marks and alterations omitted).

The County defendants argue Sheriff Ferrara is entitled to summary judgment on claim 2. The parties agree plaintiff's due process claim hinges on her claim that Sheriff Ferrara acted with deliberate indifference toward Conaway's medical needs. Dkt. 114 at 26. As previously stated, plaintiff has not proven that Sheriff Ferrara acted with deliberate indifference because Sheriff Ferrara did not interact with Conaway at all and was not aware of any alleged deprivations. Accordingly, Sheriff Ferrara is entitled to summary judgment on plaintiff's claim 2.

### c. Qualified Immunity

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity is proper unless a plaintiff can establish that an officer "committed a constitutional violation" and an officer's "specific conduct violated 'clearly established' federal law." Sharp v. Cty. of Orange, 871 F.3d 901, 909 (9th Cir. 2017). An "officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Monzon v. City of Murrieta, 978 F.3d 1150, 1156

(9th Cir. 2020) (internal quotation marks omitted). But the court's first consideration is where the officer "actually violated a constitutional right based on the record and [] alleged facts." Id. Only if the court concludes that an officer did violate a constitutional right, then the court would proceed "to decide if the constitutional right was clearly established at the time of the officer's alleged misconduct." Id. (internal quotation marks and alterations omitted).

The record does not establish that Sheriff Ferrara committed a constitutional violation. Plaintiff's argument for denying Sheriff Ferrara qualified immunity is that Sheriff Ferrara acted with deliberate indifference with respect to Conaway's care. As the court has already ruled, plaintiff has not shown that Sheriff Ferrara acted with deliberate indifference because Sheriff Ferrara did not interact with Conaway nor was Sheriff Ferrara informed of any potential violations associated with Conaway's care. Accordingly, the court GRANTS qualified immunity to Sheriff Ferrara with respect to plaintiff's claims 1 and 2.

### d. Municipal and Supervisory Liability

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where an official policy or custom causes a constitutional tort. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). But "municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." Benavidez v. Cty. of San Diego, 993 F.3d 1134, 1153 (9th Cir. 2021) (internal quotation marks omitted). To impose municipal liability under § 1983, a "plaintiff must prove: (1) [the inmate] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) the policy is the moving force behind the constitutional violation." Gordon v. Cty. of Orange, 6 F.4th 961, 973 (9th Cir. 2021) (internal quotation marks omitted). A plaintiff can show municipal liability in three ways. First, "a local government may be held liable when it acts pursuant to an expressly adopted official policy." Id. (internal quotation marks omitted). Second, "a public entity may be held liable for a longstanding practice or

1  custom." Id. (internal quotation marks omitted).  Third, "a local government may be held
2  liable under Section 1983 when the individual who committed the constitutional tort was
3  an official with final policy-making authority or such an official ratified a subordinate's
4  unconstitutional decision or action and the basis for it." Id. at 974 (internal quotation
5  marks omitted).  These "policies can include written policies, unwritten customs and
6  practices, failure to train municipal employees on avoiding certain obvious constitutional
7  violations, and, in rare instances, single constitutional violations [that] are so inconsistent
8  with constitutional rights that even such a single instance indicates at least deliberate
9  indifference of the municipality." Benavidez, 993 F.3d at 1153 (internal citation omitted).
10 Thus, a municipality is liable under § 1983 where its policy, custom, or practice is "the
11 moving force behind the constitutional violation." City of Canton, Ohio v. Harris, 489 U.S.
12 378, 379 (1989).
13      Under § 1983, "supervisory officials are not liable for actions of subordinates on
14 any theory of vicarious liability." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013)
15 (internal quotation marks omitted); see Palmer v. Vasquez, 696 F. App'x 782, 784 (9th
16 Cir. 2017).  "A supervisor may be liable only if (1) he or she is personally involved in the
17 constitutional deprivation, or (2) there is 'a sufficient causal connection between the
18 supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977
19 (internal quotation marks omitted).  "Under the latter theory, supervisory liability exists
20 even without overt personal participation in the offensive act if supervisory officials
21 implement a policy so deficient that the policy itself is a repudiation of constitutional rights
22 and is the moving force of a constitutional violation." Id. (internal quotation marks and
23 alterations omitted).
24      Plaintiff contends that the County and Sheriff Ferrara are both responsible for the
25 implementation and execution of County and CFMG policies and for policy omissions that
26 were the moving force behind Conaway's suicide.  The County agrees that it is liable for
27 any constitutional deprivations caused by CFMG policy, practice, or custom, but it
28 disagrees that Sheriff Ferrara is liable for any CFMG policy, custom, or practice.  Dkt. 107

at 22, 18.

Given the inadequate and confusing nature of the briefing in this matter by CFMG, which the County joined, the court is unable to fashion a complete ruling as to the County's municipal liability and Sheriff Ferrara's supervisory liability for acts or omissions of CFMG without additional briefing from the parties. Nevertheless, the court has determined that six of the eight policies or omissions raised by plaintiff do not survive the County defendants' motion for summary judgment.

First, plaintiff contends the County has a policy of placing suicidal inmates under MHO and housing them in cells with suicide hazards, such as bunk beds with bedsheets. Dkt. 114 at 17. But plaintiff misrepresents the County's policy. SCSO 9.012 has three types of special observations, one of which is "safety/suicide observation." Dkt. 114-1 at 80–81. Suicidal inmates are placed "in a safety cell whenever possible." Id. at 80. MHO, on the other hand, is meant to capture another population of inmates that need observations. MHO is "supervision of an inmate, as a precaution against self-injury or to monitor unusual or bizarre behavior." Id. at 81. MHO under SCSO 9.012 does not require that an inmate be housed alone in a cell with a bunk bed. Indeed, the policy only states that an "inmate on MHO status must be moved to a cell located in the infirmary area to maximize the ability of medical personnel and staff to observe and monitor them." Id. Accordingly, the court grants summary judgment to the County defendants as it relates to this so-called policy.

Second, plaintiff argues that defendants failed to train mental health staff on the MHO policy. Dkt. 114 at 20. Specifically, she contends that defendants failed to train CFMG staff to visit MHO inmates every eight hours. Id. Plaintiff argues that the failure to follow the policy was the moving force behind Conaway's death. Id. While the evidence is not clear as to whether CFMG staff visited Conaway every eight hours while he was under MHO status, plaintiff has not presented evidence that the County defendants' failure to train amounted to deliberate indifference. A failure to train claim requires a "pattern of similar constitutional violations by untrained employees." Connick v.

Thompson, 563 U.S. 51, 62 (2011). Plaintiff has not shown that the County defendants had knowledge that CFMG staff members were regularly failing to visit inmates every eight hours. And plaintiff has not shown such a pattern of similar constitutional violations. Indeed, plaintiff did not state that suicides occurred at the jail under the same circumstances as here, namely, with an inmate under MHO status who was not visited every eight hours. Thus, plaintiff cannot meet her burden with respect to this practice.

Plaintiff likewise fails on meeting her burden on supervisory liability. For supervisory liability, plaintiff must show that Sheriff Ferrara was "deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights." Flores v. Cty. of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014). That is, plaintiff must show that Sheriff Ferrara "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights." Id. (internal quotation marks and alterations omitted). Plaintiff cannot make this showing because there is no evidence that Sheriff Ferrara had knowledge of policy violations. And two state entities independently audited the jail and determined that CFMG was meeting its health administrator obligations under Title 15 of the California Code Regulations and other applicable laws at the time of Conaway's death. Ferrara Decl. ¶¶ 9–15, Exs. A–D (Dkt. 107-4). Thus, there is no evidence that Sheriff Ferrara knew there was an issue of lack of training.

Third, plaintiff asserts that had CFMG had its own MHO policy, Conaway's suicide could have been averted. Dkt. 114 at 20–21. But CFMG has its own policies on mental health and its own guidelines on suicide prevention. Dkt. 114-1 at 226–30, 232–39. In other words, CFMG is not neglecting inmate mental health, just because it does not have a specific "MHO" policy. Nonetheless, the Ninth Circuit has consistently "found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." Long v. Cty. of Los Angeles, 442 F.3d 1178, 1189 (9th Cir. 2006). Still, plaintiff does not show

that CFMG has a need for an MHO policy. For example, she does not point to inmate deprivations or constitutional violations that have occurred because CFMG lacked an MHO policy. See Long, 442 F.3d at 1190 (plaintiff created a triable issue of fact regarding the County's failure to implement a policy for the transfer of medically unstable patients). Moreover, CFMG staff refer to the "MHO" policy and related procedures in Conaway's medical records, meaning that CFMG staff were aware of, and were applying, the County's MHO policy. Thus, plaintiff cannot prove that CFMG's lack of a MHO policy was the moving force behind Conaway's suicide when Conaway's medical records show that the County's MHO policy was being enforced along with CFMG's own mental health policies.

Fourth, plaintiff asserts that had CFMG required psychological consultations of MHO inmates who posed risks to themselves, Conaway's suicide could have been prevented. Dkt. 114 at 21. But plaintiff cannot show that this alleged policy omission was the moving force behind Conaway's suicide. The MHO policy already requires mental health staff to check up on MHO inmates regularly. Dkt. 114-1 at 83. Conaway was asked several times if he wanted medication, and he refused. Id. at 110, 120. Plaintiff has not shown that Conaway would have broken his silence and accepted medical care if CFMG required a psychological consultation. Thus, plaintiff has not shown that had CFMG required psychological consultations, Conaway would have accepted medical care and would not thereafter have committed suicide. Nor has plaintiff shown that this policy omission has resulted in injury to other inmates and thus amounted to deliberate indifference. Accordingly, summary judgment for the County defendants is appropriate with respect to this policy omission.

Fifth, plaintiff asserts that the County has a practice of housing suicidal inmates in cells with bunk beds and sheets, which permit inmates to hang themselves. Dkt. 114 at 24. Plaintiff notes that a former inmate, Douglas Turner, hung himself from a bunk bed while he was under MHO status. Id. She contends the County defendants took no corrective actions as a result of Turner's suicide. Id. As mentioned, the County's policy

14

does not mandate placing suicidal inmates in cells with bunk beds.  Dkt. 114-1 at 80.  Indeed, the policy suggests that staff place suicidal inmates in "safety cells" with increased monitoring.  Id.  Notwithstanding the policy, plaintiff has not shown that the County has a practice of placing suicidal inmates alone in cells with bunk beds.  Without more, plaintiff cannot meet her burden at trial.  See Gordon, 6 F.4th at 974 (no custom or practice was shown where the record lacks evidence of any other event involving similar conduct or constitutional violations).

Sixth, plaintiff asserts that Conaway's suicide was the result of CFMG failing to require "priority 1" tasks be performed at the "next sick call."  Dkt. 114 at 23.  Plaintiff, however, only presents evidence that supports the contrary conclusion.  For example, CFMG medical staff testified that "priority 1" tasks are the "highest" priority tasks, are considered "urgent," and are expected to be addressed at the "next available sick call."  See Ballesteros Dep. 91:14-17 (Dkt. 114-2 at 19); Hornyak Dep. 40:10-25 (Dkt. 114-2 at 80); Purcell Dep. 37:7-10 (Dkt. 114-2 at 143).  Indeed, tasks are given labels from one to five with one being the highest priority.  Hornyak Dep. 40:10-14 (Dkt. 114-2 at 80).  Accordingly, plaintiff has not shown that there was no policy requiring urgency for "priority 1" tasks.

Seventh, plaintiff contends that CFMG had a custom of treating "priority 1" tasks as routine when they should have been treated as "urgent."  Dkt. 114 at 23.  Plaintiff contends this practice of treating "priority 1" tasks as routine was the moving force behind Conaway's death.  As previously explained, CFMG policy requires medical personnel to treat "priority 1" tasks as urgent and to address such tasks during the next available sick call.  Notwithstanding this policy, however, CFMG staff testify that "priority 1" tasks are not always treated as urgent.  Vice Dep. 59:11-24 (Dkt. 114-2 at 50) ("Q. Let's say there's a task that is priority number one . . . . how are those supposed to know whether it's emergent, urgent, or routine? . . . . A. There's usually a description of what the task is.  That's usually what people see and respond to."); Maike Dep. 127:2-15 (Dkt. 114-2 at 107) ("Q. With reference to routine, urgent, and emergent tasks, what does Task Priority

1  mean? A. I believe that that pops up automatically on all of our sick call lists. I really
2  believe it's something that we don't pay attention to because we treat everything as a
3  priority 1"). Dr. Purcell testified that "priority 1" is "[n]ot necessarily" the highest priority
4  task and that he does not know any CFMG staff that actually use the task priority system.
5  Purcell Dep. 36:21-37:10 (Dkt. 114-2 at 142–43). Here, Dr. Purcell did not address the
6  "priority 1" task request for him to evaluate Conaway for medication, and Conaway
7  committed suicide the next day. Accordingly, in contrast to the other policies and
8  practices noted above, a reasonable jury could conclude that the moving force behind
9  Conaway's suicide was CFMG's custom of treating "priority 1" tasks as routine, which in
10  this case meant that Conaway did not receive the medical attention from Dr. Purcell that
11  another CFMG staff member had requested.

12  Finally, plaintiff contends the moving force behind Conaway's suicide was CFMG's
13  lack of a policy requiring employees to review an inmate's prior medical records. Dkt.
14  114 at 22. Conaway's prior jail records show that he was previously prescribed
15  antidepressants by CFMG defendant Dr. Purcell and that Conaway had admitted to being
16  suicidal and depressed. Dkt. 114-1 at 122, 84, 177. Conaway died a day after Dr.
17  Purcell failed to treat his request for medication with the urgency required for a "priority 1"
18  designation. A reasonable jury could conclude that the moving force behind Conaway's
19  suicide was CFMG's failure to require medical staff to review prior inmate medical
20  records to determine Conaway's medication needs, if any, particularly given his unusual
21  behavior.

22  Thus, the court finds that six of the eight asserted policies, practices, or omissions
23  are either unfounded, do not amount to constitutional violations, or were not the driving
24  force behind a constitutional violation. The court further finds that CFMG's custom of
25  treating "priority 1" tasks as routine and the absence of a policy requiring staff to review
26  an inmate's prior medical records could be determined by a reasonable jury to amount to
27  deliberate indifference to Conaway's serious medical needs and could also be found to
28  have been the driving force behind the constitutional violation. As such, Monell and

supervisory liability might also be found by a reasonable jury.

### 2.  CFMG Defendants' Motion for Summary Judgment

The CFMG defendants move for summary judgment on all claims asserted against them.[4]  As stated during the hearing on this motion, the court DENIES the CFMG defendants' motion for summary judgment.

A "moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment."  Nissan, 210 F.3d at 1102.  In order to carry its burden of production, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Id.

The CFMG defendants fail to meet their burden on any arguments they raise in favor of summary judgment because they fail to provide any nexus between the claims asserted against them and the law and facts.  Indeed, the CFMG defendants fail to even provide a declaration explaining or authenticating any of the evidentiary material provided with their briefing.

### 3.  Other Motions

#### a.  Evidentiary Objection

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  The Ninth Circuit has repeatedly held that "unauthenticated documents cannot be considered in a motion for summary judgment."  Id.  To be admissible, a document must be authentic, meaning there must be "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).

---

[4] The CFMG defendants mention Dr. Herr in their briefing, but their attorney stated that he did not represent Dr. Herr.  As such, the court will not consider arguments for summary judgment on Dr. Herr's behalf.

17

Plaintiff objects to the inclusion of evidentiary material submitted with the CFMG defendants' motion for summary judgment because the materials are unauthenticated. Dkt. 116 at 17. The CFMG defendants fail to attach a declaration attesting to the admissibility of exhibits A, B, E, H, I, J, and K. During the hearing for this motion, the CFMG defendants' counsel stated that he believed submitting deposition testimony that was cited in plaintiff's complaint would be sufficient authentication. Dkt. 127 at 33–34. But deposition transcripts are not self-authenticating documents. See Fed. R. Evid. 902. And the CFMG defendants' exhibits include more than deposition transcripts, such as medical records. Accordingly, plaintiff's objection is SUSTAINED and the court STRIKES these exhibits.

### b. Motion to Strike Reply Brief

Plaintiff moves to strike the portion of the CFMG defendants' reply brief that exceeds the page limit. Dkt. 123. This court expressly stated that the CFMG defendants' reply was limited to 10 pages. Dkt. 104. Yet the CFMG defendants filed a 13-page reply brief notwithstanding the court's express order. Dkt. 120. The CFMG defendants could have sought leave from the court to file an enlarged brief for good cause, but they did not. Accordingly, the court STRIKES the portion of the CFMG defendants' reply brief that exceeds 10 pages.

### c. Administrative Motion to Substitute Transcript

Plaintiff, by administrative motion, moves to replace excerpts of the deposition of Michelle Bowie (dkt. 114-2) with corrected excerpts (dkt. 118-1). Dkt. 118. Good cause appearing, the court hereby GRANTS plaintiff's motion to substitute the deposition transcript of Michelle Bowie.

### d. Motions to Seal

There is a general presumption in favor of public access to federal court records. "[T]he proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means that the default posture of public access prevails." Kamakana v. City & County of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006). A party seeking to seal

materials submitted with a motion that is "more than tangentially related to the merits of the case"—regardless whether that motion is "technically dispositive"—must demonstrate that there are compelling reasons to keep the documents under seal. Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1101–02 (9th Cir. 2016).

The County defendants seek to seal Conaway's intake classification questionnaire. Dkt. 108. They contend that if the questionnaire is made public, arrestees will manipulate the classification system and undermine jail security. Id. at 3. But the questions from the intake questionnaire are obvious, such as questions on the inmate's affect and the inmate's prior incarceration experience. Dkt. 108-3 at 2–6. The questionnaire does not explain how the jail uses the inmate's information when it makes housing assignments. Therefore, the County defendants' fear that the disclosure of the intake questionnaire will lead to security issues is unsubstantiated. Thus, the court DENIES the motion to seal. The court also DENIES plaintiff's motions to provisionally seal the same questionnaire. Dkt. 115; Dkt. 117.

### e.  Request for Judicial Notice

The County defendants seek judicial notice of certified transcripts from three separate proceedings before the Superior Court of California in the matter of The People of the State of California vs. Jeremiah Conaway.

A court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Matters of public record may also be judicially noticed. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). And a court may judicially notice court documents that are already in the public record or have been filed in other courts. See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002).

The certified transcripts from the Superior Court proceedings dated March 5, 2019, March 15, 2019, and April 5, 2019 are properly subject to judicial notice as public records and court documents. Accordingly, the court GRANTS the County defendants' request

for judicial notice.  Dkt. 107-9.

### 4. Further Briefing

The court has expended considerable effort to understand the briefing, the stipulations and other concessions in this matter, but still has questions.  Now that the court has granted partial summary judgment on claims 1 and 2 for Sheriff Ferrara in his individual capacity; granted partial summary judgment for the County defendants on 6 of the 8 asserted policies, practices, or omissions; and found that at least two policies, practices, or omissions survive for trial, the court would like additional briefing on the following: (1) whether Sheriff Ferrara is still liable in his supervisory (or official) capacity on claims 1 and 2 for any constitutional violations committed by the CFMG defendants; (2) whether the court's findings on the eight asserted policies, practices, or omissions should be applied to the CFMG defendants named in claims 1 and 2, notwithstanding the denial of the CFMG defendants' motion for summary judgment; and (3) whether the County remains a defendant on all claims asserted against the CFMG defendants given the court's findings.

The court would find it helpful to receive further briefing on these three issues, and hereby orders all parties to simultaneously submit supplemental briefs not to exceed 10 pages, by December 30, 2021.  The court will issue a further order after review of the supplemental briefs.  To accommodate this request for supplemental briefing, the court VACATES the dates for pretrial filings and the pretrial hearing.  Additionally, because of Covid-19 restrictions on the number of trials that may proceed in each division, a courtroom is not likely to be available for the February 7, 2022 trial date, which is hereby also VACATED.  The court will set a scheduling conference to discuss a new trial date after receipt of the supplemental briefs.

**IT IS SO ORDERED.**

Dated: December 3, 2021

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge

20